Belknap
No. 7967

HENRY PATENAUDE

v.

TOWN OF MEREDITH

September 27, 1978

618

*Richard P. Brouillard* and *Michael R. Randall,* of Laconia (*Mr. Brouillard* orally), for the plaintiff.

*Colin A. Norberg,* of Meredith, by brief and orally, for the defendant.

DOUGLAS, J.   This case presents the issue whether the Meredith Planning Board acted within its statutory authority in denying a subdivision plan that called for construction in a "wetlands" area. Appeal of this decision under RSA 367:34 resulted in a Master's (*Robert A. Carignan,* Esq.) recommendation of affirmance. *Batchelder,* J., approved the master's recommendation. He reserved and transferred the plaintiff's exceptions to this court.

In May 1972 Henry Patenaude, a land developer, asked the Meredith Planning Board to approve his plan for subdivision of a one-hundred-acre tract. The plan divided the tract into three sections with eleven lots in section I, thirty-one lots in section II, and seven lots in section III. A twenty-acre portion, consisting of land from both sections II and III, was reserved for common recreational use. A portion of section I, lots No. 1 through 4, fronted on Fish Cove of Lake Winnipesaukee. The board inspected the tract and disapproved the plan. According to the minutes of the board's May 9 meeting, section III so exceeds the regulation minimum as to be unreasonable.

RSA 36:21 (Supp. 1977) authorizes planning boards to require open spaces of "adequate" proportion and parks of "reasonable" size in subdivisions. In using indefinite words such as "adequate" and "reasonable," the legislature gave the boards discretion in deter-

mining the size of recreational areas in subdivisions. *See* 1A C. Sands, Sutherland Statutory Construction § 21.16 (4th ed. 1972); *cf. New Hampshire Dep't of Revenue Adm. v. PELRB*, 117 N.H. 976, 380 A.2d 1085 (1977). But this discretion is limited. In exercising their statutory discretion, regulating boards must take relevant factors into account, *see Bedford Bank v. State*, 116 N.H. 649, 652, 365 A.2d 734, 736 (1976), and must take care that no arbitrary or unreasonable restraint is imposed on the exercise of rights in private property. *Antonelli Const. Inc. v. Milstead*, 34 N.J. Super. 449, 458, 112 A.2d 608, 613 (1955); *see Robbins Auto Parts, Inc. v. City of Laconia*, 117 N.H. 235, 237, 371 A.2d 1167, 1169 (1977).

There is evidence in the record from which the master could conclude that the Meredith Planning Board's disapproval of Patenaude's plan was reasonable. The testimony was uncontroverted that the twenty acres devoted to recreational use in sections II and III were unsuitably steep and relatively inaccessible to those owning lots in the subdivision. There is also evidence that the board's soil map showed that lots No. 1 through 4 were of a soil type unsuitable for development. Significant portions of lots No. 1 through 4 were wetland. Finally, the record suggests that the contested area is a wildlife habitat. The board was concerned that the land's development would be inconsistent with that part of the town's comprehensive plan that calls for preservation of natural features and maintenance of wildlife areas. We cannot say that the board did not reach a reasonable decision.

Patenaude's second challenge is that the board violated RSA 36:23 (Supp. 1977). That statute states that "[i]n case of disapproval of any plat submitted, the ground for such disapproval shall be adequately stated upon the records of the planning board." Patenaude interprets "records" to refer only to the minutes of board meetings and argues that the reason for disapproval given in the minutes, that the stakes defining the lots were in wetland areas, was not adequate. Although planning boards should fully discuss reasons for plan disapproval in board meeting minutes, we are persuaded that the legislature's use of the term "records" is significant. The legislature does not treat "records" as synonymous with "minutes." *Compare* RSA 91-A:2 *with* 91-A:5. Read as a whole, RSA 36:23 (Supp. 1977) evinces a legislative intent that the subdivider receive written reasons for disapproval and that a written record of the board's reasons would

exist so that a reviewing authority could hold the board accountable. *Cf. Foote v. State Personnel Comm'n*, 116 N.H. 145, 355 A.2d 412 (1976). *See generally* 1 F. Cooper, State Administrative Law 421–31 (1965). Letters from planning boards notifying developers of reasons for plan disapproval serve the legislative intent. Thus we hold that such letters are "records" within the meaning of RSA 36:23 (Supp. 1977).

We also believe that the letter and the minutes, taken together, furnished Patenaude with adequate reasons. In using the term "adequate," the legislature gave the board discretion, *see* 1A C. Sands, *supra* § 21.16, and recognized that sufficient reasons in one case might be insufficient in another. *See* 1 F. Cooper, *supra* at 33. Here members of the board were aware that Patenaude knew of the wet and unstable nature of the lots in question. In informing the developer that the land was unsuitable for building purposes, that the land was partially wetlands, and that development was inconsistent with both the comprehensive plan and board regulations, the board did not abuse its discretion.

The developer next argues that the board has no power to disapprove a subdivision plan when lot sizes in the plan conform to zoning requirements. RSA 36:21 (Supp. 1977) specifically empowers planning boards to regulate subdivisions to provide for "the harmonious development of the municipality and its environs" and for "open spaces of adequate proportions." The board may also ensure that "land indicated on plats submitted shall be of such character that it can be used for building purposes without danger to health. . . ." The statute further provides that the board's regulations "may include provisions which will tend to create conditions favorable to health, safety, convenience, or prosperity."

> Statutes like RSA 36:19–29, regulating the subdivision of land seek to promote the orderly and planned growth of relatively undeveloped areas within a municipality. . . . Planless growth and haphazard development accentuate municipal problems in the demand for streets, water and sanitary services which have a direct relation to traffic, safety and health.

*Blevens v. Manchester*, 103 N.H. 284, 286, 170 A.2d 121, 122 (1961). In the exercise of the power conferred by RSA 36:13–15 and :21 *as amended*, (Supp. 1977), Meredith has commendably developed and published a comprehensive plan for growth. *See generally* Office of Comprehensive Planning of the State of New Hampshire, The Land

Book (1976). Comprehensive planning with a solid scientific, statistical basis is the key element in land use regulation in New Hampshire. *See* Gilrain, *Recent Developments in Land Use Regulation*, 19 N.H.B.J. 257, at 266–67 (1978).

■ A planning board must consider current as well as anticipated realities. Whether a proposed plan conforms to zoning requirements is but one current issue. *See* Note, *Land Subdivision Control*, 65 Harv. L. Rev. 1226, 1227 (1952). In the present case the board properly looked beyond the issue of zoning compliance and considered both the community's future need of open recreational space and the current and future fitness of the land for building purposes.

■ Patenaude also challenges the board's disapproval of his 1976 plan because that rejection was "based on shifting reasons of inadequate lot size, unsuitable soils, and preservation of natural features." He argues that a reasonable person could not have known what action to take to comply with the board's requirements; therefore, the board's procedure violated due process. As we read the record, this argument is not based on the facts. The master found that "the plaintiff had early warning of the potential use the defendant board would allow him to make of the shoreline." The evidence supports this finding. The board informed Patenaude that lots No. 1 through 4 of section I were to be used only as "open space." Nonetheless, both the plaintiff's later plans called for building on those lots. Although the board gave no reason for its disapproval of the 1976 plan, we find no violation of due process. Planning boards need not reiterate their reasons for disapproval of a resubmitted plan that contains the same fundamental defect that proved fatal to the original plan. *See generally* 2 K. Davis, Administrative Law Treatise §§ 16.12–13 (1958).

■■ The developer's penultimate argument is that in passing on the 1976 plan, the board illegally considered a letter from the United States Department of Agriculture discussing the general unfitness of the Fish Cove area for development. He claims that he had no opportunity to rebut the letter and objects to the procedure on due process grounds. However, not all procedural irregularities require a reviewing court to set aside an administrative decision; material prejudice to the complaining party must be shown. *E.g.*, *Denton v. Secretary of Air Force*, 483 F.2d 21, 28 (9th Cir. 1973); *cert. denied*, 414 U.S. 1146 (1974); *NLRB v. Selwyn Shoe Mfg. Corp.*, 428 F.2d 217, 224 (8th Cir. 1970); *see Legislative Utility*

*Consumer's Council v. PUC*, 118 N.H. 93, 101, 383 A.2d 89, 93 (1978). Here there is no showing that the letter affected the board's decision. The 1976 Patenaude plan contained the same defect that doomed previous submissions; it called for development of lots No. 1 through 4. The developer argues that the master erroneously admitted the letter, which he claims was inadmissible hearsay. The planning board consulted with the Department of Agriculture, fulfilling its duty to consult with public agencies and officials concerning development. RSA 36:10. As evidence supporting the grounds upon which the board made its decision, the letter was properly considered by the master. RSA 36:34 II, III (Supp. 1977).

Finally, Patenaude argues that the board's requirement that lots No. 1 through 4 remain undeveloped amounts to an unconstitutional taking. This position is grounded on two assertions: the developer suggests that the requirement is "confiscatory" and that it forces him to make improvements on the property unnecessary to ameliorate difficulties caused by the subdivision.

██ ██ The "confiscatory" argument derives from the master's ruling that "Defendant's requirement that Plaintiff keep the shore parcel along with the 20 acre parcel as open space is confiscatory." *East Neck Estates Ltd. v. Luchsinger*, 61 Misc. 2d 619, 305 N.Y.S.2d 922 (Sup. Ct. 1969). But a master's ruling of law does not bind this court. *See Asciolla v. Manter Oldsmobile-Pontiac, Inc.*, 117 N.H. 85, 89, 370 A.2d 270, 273 (1977). Here the master's ruling is clearly incorrect. Even if *East Neck* stated the law in this jurisdiction, the requirement in dispute in the present case is not "confiscatory" within the meaning of that case. A New York planning board required a subdivider to dedicate a parcel of beach front worth over one-third the total value of the tract to public use. That parcel was suitable for the subdivider's proposed use—construction of beach homes. The court ruled the requirement "confiscatory." Neither of the grounds for the ruling in *East Neck* appears in the present case. There is no showing of the value of the twenty-five acres relative to the value of the remaining acreage. Moreover, the evidence is that the four lots at issue here are not fit for the use intended by the subdivider.

██ As the second half of his "taking" argument, Patenaude relies on the general rule that when a planning board requires an improvement as a condition of subdivision approval, the owner must be compensated unless the need for the improvement is necessitated by the subdivision. *Robbins Auto Parts, Inc. v. City of Laconia*, 117

N.H. at 235, 371 A.2d at 1168; *KBW, Inc. v. Bennington*, 115 N.H. 392, 342 A.2d 653 (1975). We agree that the rule is applicable here; it makes no difference that in this case the board asks not that the developer improve a parcel of land but that he leave it unimproved. However, when an owner intends to develop his land in a manner that will result in a significant number of people forming a community on that land, adequate recreational space is a necessity. In requiring that lots No. 1 through 4 of section I be left as open space, the Meredith Planning Board clearly intends that those moving into the subdivision will have an adequate recreational area. Thus the limitation in use is necessitated by the subdivision itself and need not be compensated.

*Exceptions overruled.*

BROCK, J., did not sit; the others concurred.