Rockingham
No. 89-252

K & P, INC.

v.

TOWN OF PLAISTOW
AND
PLAISTOW PLANNING BOARD

May 24, 1990

284

*Law Office of Mark B. Johnson*, of Andover, Massachusetts (*Mark B. Johnson* and *Linda A. O'Connell* on the brief, and *Mr. Johnson* orally), for the plaintiff.

*Sumner F. Kalman*, of Plaistow, by brief and orally, for the defendants.

JOHNSON, J.  This is an appeal by the plaintiff, K & P, Inc. (K & P) from an order of the Superior Court (*O'Neill*, J.) which affirmed the Town of Plaistow Planning Board's (Board) denial of the plaintiff's subdivision application. For the reasons set out below, we affirm.

The plaintiff's proposed subdivision plan, entitled "Sweet Hill Estates," depicts fifty-four house lots on approximately 115 acres of a 125-acre parcel. The remaining ten acres are located in the neighboring town of Newton. The parcel is U-shaped, with the outer boundary of the round part of the U facing northeasterly. The southeasterly prong is bounded at its end by Sweet Hill Road and the northwesterly prong is bounded along a portion of its side by Smith Corner Road.

The plan submitted to the Board shows that the owners of the seventeen lots on the northwesterly prong would obtain access to their property either by a road which enters from Smith Corner Road or directly from Smith Corner Road. The other thirty-seven

lots would be reached by a dead-end road system (the road) which enters from Sweet Hill Road and includes three cul-de-sacs, the furthest one being approximately 3,500 feet from the entrance to the development. At the beginning of the road there is a nine percent (9%) downward slope or grade. This case concerns the adequacy of the road, in view of its length and grade, and the Board's determination that the issue was not adequately addressed by K & P, thus resulting in the denial of its application.

The first and longest part of the road is called Ridgley Road. Beginning at Sweet Hill Road, it makes several turns, is intersected by Dunwoody Court, the first cul-de-sac, and then ends further down in the second cul-de-sac. Close to its end, Ridgley Road is intersected by Evergreen Road, which heads northwesterly and ends abruptly at the boundary between K & P's land and a large area of land in the center of the U known as the Jollimore parcel. Intersecting the north side of Evergreen Road is Windsor Court, the third and final cul-de-sac. The distance from the entrance of Ridgley Road to the end of Windsor Court is approximately 3,500 feet.

Evergreen Road was laid out so that when the Jollimore parcel was developed the two subdivisions would intersect, giving the plaintiff's subdivision another street access. At the time the plaintiff submitted its plan, however, the Jollimore land was undeveloped, even though it had received subdivision approval in 1968. Since the plaintiff's engineer was told by the Board that the 1968 plan was outdated, he placed Evergreen Road so that it could connect with the proposed Brookside Road in the Jollimore parcel, if that parcel was developed consistent with the current subdivision regulations.

Before submitting a preliminary plan, the plaintiff inquired as to the maximum allowable road grade and possible limitations on the length of a dead-end road for conventional subdivisions. The plaintiff sought to clarify these issues because they were not addressed in the subdivision regulations. The plaintiff was informed, through its engineer Paul Fredette, that a 9% grade, if acceptable to the town engineer, would be acceptable to the Board, and that the regulations contained no limit on the length of a dead-end road.

In February 1987, the plaintiff submitted a preliminary plan to the Board which was discussed at a public hearing held on May 27, 1987. According to the minutes of that meeting, the length of the road, and the plaintiff's unsuccessful attempt to purchase a piece of the Jollimore land in order to connect the two sides of the proposed development, were discussed. Reference was also made by an abutter to

the comments of the Highway Safety Committee, the police department and the fire department outlined in a letter from the Highway Safety Committee to the Board dated March 25, 1987, concerning, in part, the length and grade of the road. Near the end of the meeting, one of the Board members suggested that the plaintiff should address the concerns of the fire and police departments since the Board was bound to provide for "the safety of the towns people." The member suggested that "if the Fire Department has a problem with a 3600 foot dead-ended road, it will have to be corrected."

Although concerns were raised verbally regarding the plaintiff's preliminary plan at the public hearing, the Board did not notify K & P in writing of any specific changes the Board would require if the plan were submitted for final approval. Assuming that the Board's lack of written comments indicated tacit approval of the plan as drawn, the plaintiff submitted its final plan on July 13, 1987, without making any changes.

After the plaintiff's final plan was filed, the Board submitted the plan to Clifford Carlson, an engineer employed by Diprete, Marchionda & Assoc., Inc. (Diprete, Marchionda), the town's consulting engineers. Mr. Carlson responded with a letter dated August 4, 1987, in which he discussed, among other issues, the length of the road and the steep grade at its entrance. He noted that the plaintiff proposed to have Evergreen Road connect with Brookside Road in the Jollimore development, when built, but that the plaintiff did not have control of the Jollimore land at that time. He then suggested that it was possible to put an access road through lot 32, which is situated on Windsor Court, and lot 55 which is situated on Smith Corner Road. Such a road would alleviate the single-access road scheme on the southeasterly side of the development without relying on the future development of another owner's land.

The feasibility of this suggestion was supported in a report sent to the Board by the Chairman of the Rockingham County Conservation District, in which he stated that after a review of the plan and Mr. Carlson's letter, it appeared to him "that a road could be built from Windsor Court to Smith Corner Road through lots Nos. 32 and 55."

In addition to these two letters, several town departments commented on the need for a "back door" to the southeasterly side of the development due to the length of the road and the 9% grade. The fire chief notified the Board that it was essential for the two sides of the development to be connected by an approved road. He also noted

that a connector across the Jollimore parcel, if it could be accomplished, would satisfy the concerns of the Board of Fire Engineers.

In his letter to the Board, the Chief of Police stated that it was "of paramount importance" that "the two separate developments . . . be joined by a road connector due to the length of the road and it's [sic] grade." The highway department also commented in a memorandum to the Board that the development needed a "back door" for road maintenance in the winter and for safety.

Finally, after meeting with the plaintiff's engineers, the Highway Safety Committee sent a second letter to the Board with the recommendation "that Evergreen Road and Brookside Lane [Road] be connected." The police chief and the fire chief, as members of this committee, voted in favor of the proposal.

On August 17, 1989, K & P representatives, its engineer, several Board members, the Board's engineer, the police chief, and other interested people, went on a site walk to review the plaintiff's development property. The comments of the Board's engineer, Mr. Carlson, were made available to the plaintiff at that time, and some of them were addressed during the walk. In the time between the site walk and the final hearing on August 26, 1987, the plaintiff attempted to address all of the comments in Mr. Carlson's letter. At the final hearing, however, the plaintiff's engineer, Mr. Fredette, stated that the connector road issue was not resolved because the plaintiff felt the proposed road through Lots 32 and 55 was impractical and was not required by the regulations. He then explained once again that the plan provided for a second access through the Jollimore parcel, but he acknowledged that such an access would not be available until the parcel was developed because the plaintiff did "not have access or right to [the] property" at that time. It is clear from the record, therefore, that the plaintiff was aware of the safety concerns and Mr. Carlson's proposed solution, but chose to submit the plan as originally drawn. This is further evidenced by Mr. Fredette's statement to the Board that it was the plaintiff's "intent . . . to get the project approved as . . . presented . . . ."

The Board voted to deny the plaintiff's subdivision application on September 9, 1987. After the motion to approve the plan failed, the plaintiff was told that "the Board felt that the major concern, the length of the road, lack of connector road, ha[d] not been addressed." Mr. Fredette, who appeared on behalf of the plaintiff, asked the Board to state the specific regulations which were the basis for the denial. The chairperson of the Board assured him that K & P would

receive a letter clearly stating the reasons for the denial. Approximately a week later, K & P received a letter from the Board which stated that "[t]he reasons for this denial are failure to address the Zoning Ordinance and Subdivision Regulation requirements, detailed in correspondence, and, incorporated by reference herein . . . ." The letters from Mr. Carlson, the Rockingham County Conservation District, the Plaistow Fire Department, the Plaistow Police Department, the Plaistow Highway Department and the Highway Safety Committee were attached to the Board's letter.

After receiving the Board's letter, the plaintiff appealed the decision to the superior court. The primary witness for the plaintiff was Mr. Fredette. He testified as to the entire process of designing the subdivision, obtaining the required State and federal permits, and working with Board members, town officials and Mr. Carlson towards what Mr. Fredette hoped would be a successful end result. He also testified that between the first and second days of the hearing, held on January 16, 1989, and March 28, 1989, he learned that the Jollimore parcel was being developed in accordance with the 1968 plan. Evidence was introduced showing that with a relatively minor adjustment in the placement of Evergreen Road, the plaintiff's parcel could be connected to the neighboring development.

In addition to Mr. Fredette, another engineer, Robert D. Vanasse, also testified for the plaintiff. Mr. Vanasse opined that there was no need for a second access to the road because the adequacy of the primary access was sufficient to provide safe ingress and egress to and from the development. This expert based his opinion on the "more than adequate roadway width [and] right of way width", the lack of "subdivision control law exceedants," and the plan's geometric design.

On May 2, 1989, the superior court issued an order affirming the Board's decision. The court found "that the decision of the Planning Board was legal and reasonable. The Board considered the plaintiff's proposal along with the concerns of several outside agencies regarding a series of hazards to the public health, safety and welfare." Given these safety concerns and the plaintiff's inability "to provide a connector road through the Jollimore property, and . . . refusal to accept an alternate route," the court found that the Board's decision denying approval of the plaintiff's plan was reasonable. In reaching its decision, the court disregarded evidence of the subsequent development of the Jollimore property. The court deemed this evidence to be irrelevant because the Board's decision was to be evaluated in

terms of the facts and circumstances in existence in August and September 1987, not sometime in the future.

On appeal the plaintiff argues that the trial court erred in not granting relief, raising five issues. First, the plaintiff contends that the written decision of the Board did not adequately set forth the grounds for its denial. Second, the plaintiff argues that the Board cannot base its denial on the grounds that the 3,500-foot dead-end road was too long, or that the 9% grade was too steep, because the subdivision regulations do not impose limitations on roadway length or grade. The plaintiff's third argument is that the Board's denial was unlawful because the Board failed to follow its own regulations when it did not inform the plaintiff of specific changes it would require on the preliminary plan. In its fourth argument, the plaintiff contends that it was unreasonable for the Board to deny the application based on Mr. Carlson's comments, since the Board failed to contact him before the final hearing to determine whether the plaintiff had addressed the comments in his letter. Finally, the plaintiff argues that the decision of the Board was arbitrary, capricious and unreasonable in light of its approval of a nearby cluster development with a longer roadway and a steeper grade.

■    Before resolving the issues presented, we must note the applicable standard of review. "On appeal, we will uphold the trial court unless its decision is not supported by the evidence or is legally erroneous." *Nadeau v. Town of Durham*, 129 N.H. 663, 666, 531 A.2d 335, 337 (1987). In other words, we look at whether the evidence before the trial court reasonably supports its finding. *Durant v. Town of Dunbarton*, 121 N.H. 352, 357, 430 A.2d 140, 144 (1981).

The plaintiff's first issue concerns the adequacy of the Board's denial letter. The plaintiff contends that the Board's letter does not provide reasons for the denial. According to the plaintiff, a review of the letters incorporated by reference into the Board's letter "provides the applicant no guidance as to whether its plan, which showed a proposed connection from Evergreen Road to Brookside Road is acceptable to the Board or whether a whole new access, in accordance with the Diprete, Marchionda recommendations is required."

■■    The procedures to be followed by a town planning board when considering an application are set forth in the board's subdivision regulations, subject to the requirements of RSA 676:4. RSA 676:4, I (Supp. 1989). This section dictates that if the board decides not to approve an application, "the ground for such disapproval shall be adequately stated upon the records of the planning board." RSA

676:4, I(h). The purpose of this requirement is to insure that the developer receives written reasons for the disapproval, and that a record of the Board's reasoning exists so that the decision may be reviewed on appeal. *Patenaude v. Town of Meredith*, 118 N.H. 616, 619–20, 392 A.2d 582, 584 (1978). A letter from the Board to the applicant, together with minutes of board meetings, may satisfy this requirement. *See id.* at 620, 392 A.2d at 584–85.

■ After reviewing the minutes of several Board meetings, and the September 1987 denial letter, we conclude that the evidence before the trial court reasonably supports a finding that the reasons for denial were adequately set forth. The minutes of the preliminary hearing indicate that the plaintiff was told that any concerns of the fire department about the long road would have to be corrected. In addition, the plaintiff was informed approximately ten days before the final hearing that Mr. Carlson was concerned about the road and that he offered a solution in his letter to the Board. The plaintiff then met with the Highway Safety Committee and received its members' support for the Evergreen Road-Brookside Road connection, but the minutes are devoid of any explanation as to how this connection would be made onto land that the plaintiff neither controlled nor owned. Finally, as reflected in the minutes of the September 9, 1987 meeting, the chairperson of the Board informed Mr. Fredette that the plan was not approved because "the major concern, the length of the road, [and] lack of [a] connector road, ha[d] not been addressed." It is evident from this review of the record that the plaintiff was well aware of the Board's concern about the long dead-end road, and that the primary reason the plaintiff's plan was denied was the plaintiff's failure, in the Board's opinion, to address the safety concerns raised by Mr. Carlson and certain town officials.

The plaintiff next argues that the Board's reasoning was insufficient and unreasonable as a matter of law because the subdivision regulations do not contain limits on the length or grade of dead-end roads in conventional subdivisions, and because the regulations contemplate the use of adjoining property to provide access to a new subdivision.

■ While it is true that the regulations are silent as to the length and grade of dead-end roads in this type of development, it does not follow that the Board is powerless to deny the plaintiff's application for reasons pertaining to the road at issue here. In addition to reviewing the specific requirements for a development, the Board must "take into consideration the public health, safety and general welfare

. . . of the public in general and the residents of the immediate neighborhood in particular . . ." when reviewing site plans and subdivision plans. REGULATIONS GOVERNING THE SUBDIVISION OF LAND AND THE REVIEW OF SITE PLANS, Section 1.3 (amended 1980) (PLAISTOW SUBDIVISION REGULATIONS). *See* RSA 674:36, II(j) (subdivision regulations adopted by a planning board may "[i]nclude provisions which will tend to create conditions favorable to health, safety, convenience, or prosperity"); *Durant*, 121 N.H. at 355, 430 A.2d at 142 (scope of regulations pertaining to health and safety considerations "may be quite broad"). Therefore, since the record reflects that potential hazards to public health, safety and welfare were considered by the Board, the court's conclusion that the Board was justified in exercising its "responsibility to ensure that all subdivision plans do not threaten public safety" was proper.

■ The plaintiff argues that the proposed connection to the Jollimore subdivision should have satisfied the Board's concerns about the length and grade of the road since the regulations contemplate the use of adjoining property to provide access to new developments, *see* PLAISTOW SUBDIVISION REGULATIONS, Section 4.4.2, and since it is recognized that planning boards "'must consider current as well as anticipated realities,'" *Durant*, 121 N.H. at 357, 430 A.2d at 143 (quoting *Patenaude*, 118 N.H. at 621, 392 A.2d at 585). The plaintiff insists that the Board should have known that the 1968 Jollimore plan was still valid, that the owner wanted to use the 1968 plan, and that construction would begin in the following year or two after the hearing on the plaintiff's subdivision in August 1987, thus making the connection of the two neighborhoods possible. At the superior court hearing, the plaintiff attempted to support this position with evidence of the subsequent development of the Jollimore parcel in accordance with the 1968 plan. We agree with the trial court that this evidence was irrelevant to the court's determination of "whether the Board's decision was reasonable or legal in August and September 1987. . . ." It is also irrelevant that the Board informed the plaintiff that the 1968 plan was outdated, when the plan was, in fact, still good. It is not the exact placement of Evergreen Road that is critical here, but that neither the Board nor the plaintiff knew whether or when the owner of the Jollimore parcel was going to develop it. The Board did not deny the plaintiff's plan because Evergreen Road was lined up incorrectly, but rather because there was no way to tell when, if ever, Evergreen Road would be another outlet for the southeast side of the plaintiff's development. Therefore, even though sev-

eral town officials recommended that Evergreen Road and Brookside Road be connected, the Board was justified in rejecting the plan if such a connection was not a viable option at the time the plan was submitted for approval.

The third issue raised by the plaintiff on appeal concerns the Board's failure to inform the plaintiff in writing of specific changes it would require on the preliminary plan. The plaintiff contends that the Board could not deny its plan based on a defect which was part of the preliminary plan. The Board's failure to notify the plaintiff in writing that the length and grade of the road was a potential problem was, according to the plaintiff, a waiver of the Board's right to deny the plan on that issue. We disagree.

Section 3.2.2 of the Plaistow Subdivision Regulations provides that "[t]he Board shall review the preliminary layout with the potential applicant and may hear and confer with other parties whose interest may be affected by the preliminary layout. After such discussion, the Board shall communicate in writing to the applicant the specific changes, if any, which it will require from the preliminary layout if a site plan or subdivision plat were to be submitted . . . ."

■ It is clear from the minutes of the preliminary hearing that the length of the dead-end road was discussed and that it was a concern of the fire and police departments and the Highway Safety Committee. It does not appear, however, that the Board decided at that time that "specific changes" to the plan would be required. *See* PLAISTOW SUBDIVISION REGULATIONS, Section 3.2.2. Furthermore, the Board did not submit the plan to Diprete, Marchionda until after the preliminary hearing, and thus did not have Mr. Carlson's comments before it. Therefore, the Board was not foreclosed from declining to accept the plan based on new information or additional input which generated or emphasized legitimate safety concerns.

■ The plaintiff's final two issues are easily resolved because the evidence presented to the superior court failed to support the plaintiff's arguments, and the plaintiff has therefore failed to show that the Board's decision was unlawful or unreasonable. *See* RSA 677:15, I; *cf. Barrington East Owners' Assoc. v. Town of Barrington*, 121 N.H. 627, 630, 433 A.2d 1266, 1268 (1981) (burden of proof is on appealing party to show that decision of board is unlawful or unreasonable). The plaintiff's allegation that the Board did not contact Mr. Carlson before the final hearing to determine whether the plaintiff had addressed his concerns is not established in the record. The chairperson of the Board testified that she could not remember

whether the Board communicated with Mr. Carlson between August 4, 1987, the date of his letter, and August 26, 1987, the date of the final hearing. Since the plaintiff did not elicit testimony from Mr. Carlson himself, or from any other witness able to establish this alleged fact, the plaintiff failed to meet its burden of proof on this issue.

■ The plaintiff also failed to show that the Board's denial of its plan was arbitrary, capricious and unreasonable in light of the approval of a nearby cluster development with a similar, if not longer and steeper, roadway. The plaintiff alludes to some misconduct or bias because Diprete, Marchionda was the engineering company that submitted and obtained approval for the nearby cluster development, and then, acting as the Board's consultant, expressed concern for the length and grade of the road in the plaintiff's proposed development. The Board refuted the plaintiff's position with the argument that the two developments should not be compared because the regulations for cluster developments and for conventional subdivisions are different. Although the plaintiff responded by arguing that the safety issues are the same despite the differing regulations, the plaintiff failed to prove its allegation of unfair treatment by eliciting testimony as to why one plan was denied and the other was approved. Therefore, the plaintiff failed to meet its burden of proof on this issue as well.

Finally, in its reply brief, the plaintiff contends that the recent case of *Condos East Corp. v. The Town of Conway & a.*, 132 N.H. 431, 566 A.2d 1136 (1989) is analogous and mandates a similar result. We disagree and find that the *Condos* case can be distinguished on many facts. For instance, in *Condos* a second access to the proposed development was not a viable option, the road layout was different, and all the experts, including the one hired by the Board, agreed that the subject road was not a safety risk. *Id.* at 433, 566 A.2d 1137–38. Therefore, we are not persuaded by the plaintiff's assertion that the two cases are alike, and we decline to hold that the Board in the present case acted unreasonably, as did the board in the *Condos* case.

*Affirmed.*

All concurred.