[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiffs, BRT Financial Services Corporation[1] and Janet McDonald[2], from the denial of seven applications for special use permits by the defendant, the Town of Watertown Planning and Zoning Commission, to construct seven two-family homes on seven lots owned by the plaintiffs in the Town of Watertown, Connecticut.
The defendant denied the applications pursuant to its authority under General Statutes §§ 8-2 and 8-3c. The plaintiffs appeal the defendant's denials pursuant to General Statutes § 8-8.
The plaintiff's have appealed to Superior Court contending that there was (1) prejudgment of the applications by the defendant and its commissioners; (2) failure of the defendant to consider the applications separately; (3) inconsistent findings and rulings by the defendant; (4) failure of the defendant to approve the applications though they were in compliance with the CT Page 3530 defendant's regulations; and, (5) no evidence to support the defendant's action. (Complaint, ¶ 18.)
The plaintiffs' appeal consists of seven counts, each pertaining to one of the seven application denials by the defendant. The bases for the appeal of each of the seven counts are identical.
The following procedural history is relevant.
The defendant held a special meeting on January 27, 1994, at which time the plaintiffs' applications were denied. The defendant's decision regarding the denials was published on February 3, 1994. § 8-3c(b). The plaintiffs served notice of the present appeal on the defendant through its chairperson, Judith Wick, on February 17, 1994, and also on Delores Larosa, Watertown Town Clerk, on that same date. §§ 8-8(a) and (b). The appeal was filed with the Clerk of the Superior Court, judicial district of Waterbury, on March 1, 1994.
The court finds that aggrievement has been established by virtue of ownership of the land, and the appeal was taken in timely manner.
Statutory rights of appeal from the denial of a special use permit application by a planning and zoning authority are governed pursuant to General Statutes §§ 8-8 and 8-9. Appeals from administrative boards are limited to a review of the record. Gagnon v. Inland Wetlands Watercourses Commission,213 Conn. 604, 609, 569 A.2d 1094 (1990). "The plaintiff's burden in challenging the action of the agency in denying the application, is to show that the agency acted arbitrarily, illegally or that the decision is not reasonably supported by the evidence. Lovejoy v. Water Resources Commission, 165 Conn. 224,228-29, 332 A.2d 108 (1973)." Madrid Corporation v. InlandWetlands Agency, 25 Conn. App. 446, 449, 594 A.2d 1037, cert. denied, 220 Conn. 915, 597 A.2d 334 (1991).
"Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record."Primerica v. Planning and Zoning Commission of Town ofGreenwich, 211 Conn. 85, 96, 558 A.2d 646 (1989). "On appeal, a reviewing court reviews the record of the administrative proceedings to determine whether the commission or board . . . has acted fairly, or without proper motives or upon valid CT Page 3531 reasons." (citations omitted; internal quotation marks omitted.) Schwartz v. Planning and Zoning Commission of Town ofHamden, 208 Conn. 146, 152, 543 A.2d 1139 (1988). In reviewing an administrative agency's decision, the court does not substitute its judgment for that of the agency. Frito Lay, Inc.v. Planning and Zoning Commission, 206 Conn. 554, 572-73, 538 A.d 1039 (1988). "The burden of overthrowing the decision of the board rest[s] squarely upon the plaintiff." Verney v.Planning and Zoning Board of Appeals of Town of Greenwich,151 Conn. 578, 580, 200 A.2d 714 (1964).
The facts as stated in the record are as follows. The plaintiffs, BRT Financial Services Corporation ("BRT") and Janet McDonald, own seven parcels of real property on Cherry Avenue in the Town of Watertown Connecticut, with BRT owning four of the lots and McDonald owning three. (Pl. Exs. 1-4.) Dennis McDonald, the previous owner of the three lots presently owned by Janet McDonald, and BRT filed seven separate applications for special permits with the defendant, the Watertown Planning and Zoning Commission on November 3, 1993, seeking approval for the construction of seven two-family homes, one on each of the seven lots. (Complaint, ¶ 7.) A public hearing was held by the defendant on January 5, 1994, at which time the applications were discussed. (Complaint, ¶ 13.)
On January 27, 1994 the defendant held a special meeting and denied all of the plaintiffs' applications. (Complaint, ¶ 16.) The reasons given by the defendant for the denials were referred to in the record as: density and congestion; traffic and safety; comprehensive plan not allowing for multi-family housing in the proposed area; size and intensity of the proposed use; parking problems; disharmony with the neighborhood; decrease in surrounding property values; inappropriateness of proposed use in a residential area; and, snow removal problems. (ROR #10.)
At the special meeting on January 27, 1994, wherein the plaintiffs' applications for special permits were denied, the defendant stated its reasons for denying the seven applications as follows:
 [a] motion was made by Mr. Masi and seconded by Mr. Polletta to deny Special Use Application #93, 94, 95, 96, 97, 98, and 99 for the reasons that were mentioned in the discussion, concerning the safety, property CT Page 3532 values, the fact that this is a single family area predominately, it was approved for a single family house. All of the comments that Mr. Skyrme, Mr. Polletta and Mrs. Wick made.
(ROR #10.) Where the zoning board does not state on the record its reasons for its action, "the trial court [is] required to search the record for reasons supporting the board's decision."Connecticut Resources Recovery Authority v. Planning and ZoningCommission of Town of Wallingford, 225 Conn. 731, 743,626 A.2d 705 (1993). Here, the record indicates that in addition to the grounds of safety, property values and the area consisting of predominantly single-family homes, the comments of the defendant's commissioners Skyrme, Polletta and Wick included additional grounds for the denial of the plaintiffs' applications. The comments made at the special hearing by these three commissioners centered around the issues of: density, congestion and access road problems including traffic problems; street grade and safety; comprehensive plan not allowing for multi-family housing in the proposed area; size and intensity of the proposed use; parking problems;[3] disharmony with the neighborhood; decrease in surrounding property values; and, inappropriateness of the proposed use in a residential area. (ROR #10.) In addition, this final comment was made at the special hearing:
 Mr. Downey: I would just like to add that I think it is just too big of a house for the size of the lot and I cannot imagine at this time of the year, where they would put all of the snow that they would have to clear to accommodate four cars in that one house.
 That is a lot of snow and I can see with it a one family house in Oakville, there is not a place to put the snow. You have to compound it here.
(ROR #10.) "[A] zoning authority's decision . . . should be sustained if even one of the stated reasons is sufficient to support it." (Citation omitted; internal quotation marks omitted.) Scalzo v. City of Danbury, 224 Conn. 124, 129,617 A.2d 744 (1992).
The court will first take up the plaintiffs' argument that the defendant impermissibly prejudged the plaintiffs' applications, in that, CT Page 3533
 (a) Two of the Commissioners prejudged the Plaintiffs' application[s] and voted against [them] for the same reasons they voted against application #77 requesting a two-family dwelling on Lot #10 of the Highgate Subdivision on October 5, 1988.
 (b) The Commission prejudged the Plaintiffs' application[s] because IT opposed the Highfield Subdivision and wanted the Cherry Avenue area left undeveloped as a buffer from the Highgate Condominium.
 (c) The Commission prejudged the Plaintiffs' application[s] and voted against [them] in one motion to deny all seven of the Plaintiffs' applications for special use permits.
(Complaint, ¶ 18.)
"In testing the correctness of [the zoning authority's] conclusions, [the court must] review the facts in the record on which they were based." Goldberg v. Zoning Commission of Townof Simsbury, 173 Conn. 23, 26, 376 A.2d 385 (1977). Prejudgment in rendering a decision is established where it is proved that the commissioners "actually had made up their minds prior to the public hearing, regardless of any arguments that might have been advanced at the hearing. . . . This issue involves a question of fact and the burden of proving the illegality [i]s on the plaintiffs." Cioffoletti v. Planning Zoning Commission,209 Conn. 544, 555, 552 A.2d 796 (1989). The court may hear additional proof as to this issue. Id., 556. Where the "comments relied upon were all made during the hearing or in the discussions preceding the vote upon the application[, t]hey do not . . . indicate any predisposition that would have disqualified . . . members before the hearing." Id., 555.
In this case, not all of the comments relied upon by the plaintiffs to prove prejudgment were made concerning the applications at issue here. The comments outside of those made during discussion of the present applications[4], consist of two comments which the plaintiffs allege in their brief were made during a 1988 meeting wherein the defendant denied a special use permit application for a lot adjacent to the ones at issue here. These statements are alleged by the plaintiffs as follow: CT Page 3534
 Mr. Polletta: He was correct in remembering that only single family dwellings would be constructed.
 Mr. Skyrme: Also commented that it was very clearly, single family homes . . . .
 (minutes of regular meeting 10/5/88 at pages 3, 4 Return Document # 5.6).
(Plaintiffs' Brief, pp. 3-4.) The plaintiffs argue that these statements "establish that the Commission `crossed the line between permissible formulation of a tentative opinion and illegal prejudgment of the issue.'" (Plaintiffs' Brief, p. 4, quoting Daviau v. Planning Commission of City of Putnam,174 Conn. 354, 387 A.2d 562 (1978).)
The record indicates that the defendant held a public hearing on October 5, 1988, and a regular meeting on October 6, 1988; (ROR #5.6); and that at those meetings a special use permit application for construction of a two-family dwelling on a lot adjacent to those in issue here was discussed[5]. The comment alleged by the plaintiffs to have been made by Mr. Polletta, however, was taken out of context by the plaintiffs. His entire comment as set out in the minutes of the meeting was as follows:
 Mr. Polletta suggested that this [vote] be tabled in order that he may review the last discussion concerning this [application] to make certain that he was correct in remembering that only single family homes would be constructed.
(ROR #5.6, Minutes of Regular Meeting, p. 3.) This comment does not support a
 finding that the commissioners had made up their minds that they were going to disapprove the plaintiff's plan regardless of any evidence or argument presented at a public hearing. Only such a finding could support the conclusion that the commissioners had crossed the line between permissible formulation of a tentative opinion and illegal prejudgment of the issue. CT Page 3535
Daviau v. Planning Commission of City of Putnam, supra,174 Conn. 358. Comments made by Mr. Skyrme at the public hearing concerning this application additionally do not support a finding that the present applications were prejudged. The following discussion occurred at the 1988 public hearing:
 Mr. Lou Hardt, 474 Cherry Avenue, Watertown, Ct.: If that's a ten lot subdivision and if this gets passed, a duplex, how about the other nine lots?[6]
 Mr. Skyrme: This is an application for a single lot for a special use only on this lot.
 Mr. Moskaluk: When they originally made the application they made it for single family homes.
 Mr. Skyrme: This has no bearing on the other nine lots. Purchasers of each of those other nine lots, presuming they meet the zoning regulations, could file special use applications as well, or they may not, that's an unknown.
(ROR #5.6, Minutes of Public Hearing, p. 2.)
The only comment made by Mr. Skyrme, alleged by the plaintiffs to evidence prejudgment of the plaintiffs' seven applications, is where Mr. Skyrme "also commented that it was clearly single family homes . . . ." (Plaintiffs' Brief, p. 4.) However, the record indicates that this comment by Mr. Skyrme was made in response to Mr. Polletta's and others' recollection that the original application for the subdivision of the ten lots on Cherry Avenue, submitted by the owners, was for construction of single-family homes. (ROR #5.6, Minutes of Regular Meeting, p. 3.) Furthermore, this comment by Mr. Skyrme is not transcribed in the minutes as a verbatim quotation, and may well have been paraphrased and/or condensed for purposes of efficiency. Nevertheless, even if the comment is a verbatim quotation, it does not support a finding of prejudgment on Mr. Skyrme's part as to the present applications, as it was simply a response to others' recollections and uncertainty concerning the ten lot subdivision on Cherry Avenue.
The plaintiffs further argue that the defendant prejudged the seven applications because the defendant itself wanted to keep the area free from development. (Complaint, ¶ 18(b).) The CT Page 3536 only evidence to support this contention set forth by the plaintiffs, however, are comments made by the defendant's commissioners at the special hearing held on January 27, 1994. These comments were all made during discussion of the proposed applications at issue and, as previously discussed, are not sufficient evidence of prejudgment. Cioffoletti v. Planning Zoning Commission, supra, 209 Conn. 555. Furthermore, prior to the special meeting at which the plaintiffs' applications were denied, the defendant conducted a public hearing on January 5, 1994, wherein evidence and testimony[7] were submitted concerning the proposed special use permit applications for the construction of the seven two-family homes at issue in this appeal. (ROR #6.) A number of residents from the Cherry Avenue neighborhood came to the public hearing on January 5, 1994, and voiced opposition to the applications. In view of the testimony set forth in the record of these interested residents, the plaintiffs have not established prejudgment due solely to personal motives on the part of the defendant.
Finally, as to prejudgment, the plaintiffs argue that the seven applications were all denied by the defendants in one vote. According to the plaintiffs, this is evidence that the defendant prejudged each of the applications, as the "total impact of one duplex home, or two duplex homes upon traffic, property values, etc. (factors cited by the Commission) is different from the impact of six or seven duplex homes," (Plaintiffs' Brief, p. 5.) Additionally, the plaintiffs contend that "[t]he Commissions failure to act upon each application separately constitutes a denial of procedural due process guaranteed to the Plaintiffs by the Connecticut and United States Constitutions." Id.
The fact that all of the applications were denied in one vote does not support a finding that the applications were prejudged; Cioffoletti v. Planning Zoning Commission, supra,209 Conn. 555; plaintiffs' argue with some authority that the applications should have been voted on separately. The plaintiffs cite Norris v. Planning Zoning Commission of theTown of Westport, 156 Conn. 592, 597, 244 A.2d 378 (1968) as authority for this position. In Norris, the Court was faced with an appeal from the decision of the superior court dismissing the plaintiffs' zoning appeal, wherein the plaintiffs appealed on the ground that the commission failed to hold separate hearings and accept separate testimony for the plaintiffs's three separate proposals. The Court stated, CT Page 3537
 [w]e find no merit in the claim of the plaintiffs that the commission was guilty of a procedural error in hearing the three matters at a single or simultaneous hearing. It is not without significance that they cite no authority for their claim. Nor do they point to any way in which they have been prejudiced by the decision of the commission to proceed as it did. The proposals were clearly independent and to require completely separate hearings, testimony, exhibits and arguments on each proposal would not only be unduly burdensome but serve no useful purpose. That the merits of the three proposals could be considered together and without prejudice is indicated by the action of the plaintiffs themselves in presenting their three appeals to this court on one record and one brief rather than three separate records and briefs. The important thing is that, although the commission heard all of the evidence on the three proposals at a single hearing, when it came time to act upon them, it clearly acted separately and distinctly and for specific and relevant reasons on each of the proposals.
Id., 596-97.
The defendant argues that the plaintiffs themselves presented the applications as a "package deal", and further, that at no time during the public hearing did the plaintiffs object to the joint consideration of the applications, nor did the plaintiffs suggest that any number of special use permits less than seven would somehow fare differently or more favorably. (Defendant's Brief, p. 14.) The record substantiates the defendant's contention in this regard. (ROR ##6, 6.2 and 6.5.) Nevertheless, although the collective presentation of evidence and testimony with respect to the seven applications was not impermissible under Norris, the same case frowns upon the taking of a single vote on them. The court in Norris
states: "The important fact is that, although the commission heard all of the evidence on the . . . proposals at a single hearing, when it came to act upon them, it clearly acted separately . . . ." Norris v. Planning Zoning Commission ofTown of Westport, supra, 156 Conn. 597.
The defendant argues that even if the single vote taken by CT Page 3538 the defendant was not the best procedure, the plaintiffs must still establish that they have been prejudiced "in order to pursue or prevail on a procedural claim of this nature. "The court agrees. "`[N]ot all procedural irregularities require a reviewing court to set aside an administrative decision; material prejudice to the complaining party must be shown.'"Murach v. Planning Zoning Commission of City of New London,196 Conn. 192, 205, 491 A.2d 1058 (1991), quoting Patenaude v.Meredith, 118 N.H. 616, 621, 392 A.2d 582 (1978).
In Murach, the Court determined that the plaintiffs in that case had not met their burden in showing prejudice, in that they had not demonstrated that the irregularity in the procedure "in any way affected the ultimate" outcome of the matter presented to the commission by the plaintiffs in that case. Id., 206. Here, however, the plaintiffs argue in their brief, their trial brief and at oral argument before the court, that the defendant is required to vote separately on these applications, that their constitutional due process rights require that the applications be voted on separately, and that the outcome of each application before the defendant might very well have been different as to one application or two, etc., as the grounds enumerated by the defendant for denying the applications are such that seven two family homes may have justified those conclusions, though some number less than seven may have not. (Plaintiffs' Brief, p. 5: "The total impact of one duplex home, or two duplex homes upon traffic, property values, etc. (factors cited by the Commission) is different from the impact of six or seven duplex homes."); (Certified Transcript of February 3, 1995, p. 19: "They didn't consider whether the granting of three applications or four applications would have a different effect on this neighborhood than the granting of all seven."); (Plaintiffs' Trial Brief, p. 5: "Proper procedure and fairness to the Plaintiffs require individual consideration and vote upon each application. . . . The commission's decision is neither based upon substantial evidence nor in compliance with due process.") The court must review the record to determine if the plaintiffs' assertions substantiate a claim of material prejudice, i.e., whether the "ultimate" outcome of the applications may have been different had the defendant voted on them separately.
The plaintiffs allege that the defendant amended its zoning regulations and map on December 24, 1993, subsequent to the filing by the plaintiffs of the seven applications at issue here, and that the plaintiffs' applications are to be considered CT Page 3539 under the zoning regulations and map effective on the date their applications were filed, November 3, 1993. (Complaint ¶¶ 7, 8, 11, and 12.) The defendant admits to these allegations. (Answer, p. 1.)
Regulations concerning special use permits in Watertown are located in § 52 of the town's zoning regulations. The regulations relevant to the plaintiffs' applications which were effective on November 3, 1993, state,
52.6 General Considerations: In addition to general and special standards for particular uses that are hereinafter specified, the Commission shall consider the following before acting on any SPECIAL USE Application:
 52.6.1 The size and intensity of the proposed use, and the size of the lot on which it is to be located;
 52.6.2 The effect of the proposed use on any adopted Comprehensive Plan of Development for the Town;
 52.6.3 The capacity of adjacent and feeder streets to accommodate peak traffic loads, and any traffic hazards that may be created by the use;
 52.6.4 The effect upon property values and appearance in the neighborhood, taking into account the topography of the lot and the character, location and height of proposed buildings and structures and the site plan and proposed landscaping;
 52.6.5 The number, location, and arrangement of off-street parking and loading spaces and the vehicular access to the lot;
52.6.6 Fire and police protection needs; and
 52.6.7 Water supply, sewage disposal facilities and drainage and erosion problems.
 52.7 General Standards: The following general standards shall apply to all SPECIAL USES: CT Page 3540
 52.7.1 Access: Provision shall be made for vehicular access to the lot in such manner as to avoid undue hazards to traffic and undue traffic congestion on any street[.]
 52.7.2 Neighborhood: The site plan and architectural plans shall be of a character as to harmonize with the neighborhood, to accomplish a transition in character between areas of unlike character to protect property values and to preserve and enhance the beauty of the community.
 52.7.3 Plan of Development: The site plan and architectural plans shall be in conformance with the purpose and intent of the Comprehensive Plan of Development adopted by the Commission for the area in which the SPECIAL USE is to be located, and the site plan shall provide for the appropriate continuation and improvement of streets terminating at the lot where the use is to be located.
(ROR #1.) The record indicates that the defendant denied the plaintiffs' applications based on general considerations 52.6.1; 52.6.2; 52.6.3; 52.6.4; and, 52.6.5; as well as general standards 52.7.1; 52.7.2; and, 52.7.3. (ROR #10.)
As to the first general consideration, 52.6.1, the size and intensity of the proposed use, and the size of the lot on which it is to be located, the following discussion took place at the special meeting on January 27, 1994:
 Mr. Masi: I think that there is consideration that should be given to the size and the intensity of the use on the lots that are being proposed. The lots were basically designed for single family houses. True, they are a bit more than the 10,000 square feet but I am sure that if this were considered for a multi-family use in its totality, it would have been a completely different looksie as to how it would have been done, including not having driveways onto Cherry Avenue. It is bad enough that CT Page 3541 you have to have driveways for the single family houses, let alone duplexes. . . .
 Mr. Downey: I would just like to add that I think it is just too big of a house for the size of the lot and I cannot imagine at this time of year, where they would put all of the snow that they would have to clear to accommodate four cars in that one house. That is a lot of snow and I can see with it a one family house now in Oakville, there is not place to put the snow. You have to compound it here.
(ROR #10.) These comments do not support the plaintiffs' claim that the ultimate outcome as to general consideration 52.6.1 may have been different had the applications been voted on separately by the defendant, as these comments indicate that the size and intensity of the proposed uses were considered as to each lot.
As to general consideration 52.6.3, the capacity of adjacent and feeder streets to accommodate peak traffic loads, and any traffic hazards that may be created by the use, and general standard 52.7.1, access, the comments were as follows,
 Mr. Skyrme: Yes, I will open it. If everyone recollects that during the public hearing requested that the minutes of the original subdivision be included. The reason I did that was because there was substantial discussion about the consternation that there was even going to be single family lots there because the density that the existing condominiums up there put into the area and the conditions of the access roads to that area. There was a lot of concern about the fact that one of the primary routes out to Cherry Avenue, Cherry Avenue has some of the worst, if not the worst grades of any streets in town, so the safety issues are paramount to this particular area.
In addition, it is a very congested area. CT Page 3542 Our plan does not contemplate putting any more multi-family housing up in that area. The road system won't handle it and it is just inappropriate for the area. It was in fact, inappropriate to take that particular chunk of land away for all ten of those lots because everyone thought it to be a buffer for the condominiums. We were just in a legal bind and there was nothing that we could do about that and we had to approve the subdivision to put single family houses there, to allow duplexes would just make it even worse. . . .
 Mr. Masi: . . . I think that the grades are extremely steep in areas of Cherry Avenue, probably more so than the subdivision regulations, especially the area going down into Main Street. Any existing traffic and so forth that would generate in that area is going to cause problems.
(ROR #10.) These comments concerning safety and traffic do not support the plaintiffs' argument that the outcome may have been different had the defendant voted on each application separately, as the comments indicate that the road system could not handle any additional multi-family housing, and additionally indicate that the safety concerns are equally valid for any additional housing.
As to general consideration 52.6.5, the number, location, and arrangement of off-street parking and loading spaces and the vehicular access to the lot, the comments were as follows,
 Mr. Masi: . . . I think that, I am not crazy about the off street parking in terms of stacking two cars in a garage long ways as a way of solving a parking problem and making sure cars are off the street. I think again, if we were looking at this as a plan of multi-family uses there would have been adequate places to park guaranteeing there was enough places to park and buffering and so forth. . . . CT Page 3543
 Mr. Downey: . . . I cannot imagine at this time of year, where they would put all of the snow that they would have to clear to accommodate four cars in that one house.
(ROR #10.) These comments do not support the plaintiffs' argument. The comments concern individual houses and parking, and support a finding that the ultimate outcome would not have been different as to this consideration had the defendant voted separately.
In sum, the record supports a finding that the ultimate outcome as to the plaintiffs' applications would not have been different had the defendant voted separately on each of them, based on general considerations 52.6.1, size and intensity of the use; 52.6.3, safety and traffic concerns; 52.6.5 parking concerns; and, general standard 52.7.1, access. "[A] zoning authority's decision . . . should be sustained if even one of the stated reasons is sufficient to support it." (Citation omitted; internal quotation marks omitted.) Scalzo v. City ofDanbury, supra, 224 Conn. 129. The plaintiffs' have not been materially prejudiced in the manner in which the defendant voted on the plaintiffs' applications, and, therefore, lack of separate votes on each separate lot application do not warrant overturning the decision.
The plaintiffs next argue that the defendant's decision is not reasonably supported by the record, in that the applications comply with Watertown zoning regulations and, additionally, that the defendant's action violates superior court decisions regarding special permits with similar facts and regulations. (Plaintiffs' Brief, pp. 5-16.)
"Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record."Primerica v. Planning and Zoning Commission of Town ofGreenwich, supra, 211 Conn. 96. "A special permit allows a property owner to use his [or her] property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values. . . . Acting in this administrative capacity, the board's function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and CT Page 3544 whether the standards set forth in the regulations . . . are satisfied." (Citation omitted; internal quotation marks omitted.) Housatonic Terminal Corporation v. Planning ZoningBoard of City of Milford, 168 Conn. 304, 307, 362 A.2d 1375
(1975).
The plaintiffs next argue that the applications comply with general consideration 52.6.3 and general standard 52.7.1 regarding traffic, safety and access, and that the defendant's conclusion that they do not is not reasonably supported by the record. The court does not agree.
The plaintiffs argue that seven additional homes will have no significant impact on traffic or safety, due to the number of other residents in the area who already use the road on which the proposed units will be built. The defendant concluded, however, that any additional traffic from multi-family housing could not be handled safely by the road. (ROR #10.)
The plaintiffs argue that in as much as the defendant based its denial of the applications on the street grade of Cherry Avenue, they contend that they were never given an opportunity to respond to the defendant commissioners' opinions about street grade, as this concern was not raised at the public hearing. (Plaintiffs' Trial Brief, p. 4.) The record indicates that the defendant commissioners did base their conclusion that the proposed uses would not comply with traffic and safety requirements, in part, on their personal knowledge of the grade of Cherry Avenue. (ROR #10.) The record also indicates, however, that Ed Schreiner, Russell Perry, Audrey Schipul, Hugh Hart, and Fred Schipul, residents of the area, voiced their knowledge of the street conditions and traffic concerns of Cherry Avenue at the public hearing in the presence of plaintiffs' counsel. (ROR #6, pp. 12-17.) Though street grade itself was not specifically raised at the public hearing, the physical condition of Cherry Avenue was addressed as follows,
 Mr. Schreiner: . . . There is a sharp corner up on this section, they have been working on it, but the road is still going to be curved, I don't care how much ledge you take out of there, visibility is not good and is never going to be good and a lot of people who are not familiar with the road are going to come zipping around that corner and CT Page 3545 they are not going to see people coming and going and you are going to see alot of that activity.
(ROR #6, p. 12-13.) The record memorializes that the issue of the safety of Cherry Avenue with regard to added traffic was raised at the public hearing. The record also indicates that plaintiffs' counsel was given an opportunity to respond to this concern; (ROR #6, p. 18.); but did not do so. Furthermore, the record supports a finding that the conclusions of the defendant with regard to general consideration 56.2.3 and general standard 52.7.1, were not limited to the grade of Cherry Avenue. The defendant's commissioner, Mr. Skyrme, stated, "[i]n addition, it is a very congested area. Our plan does not contemplate putting any more multi-family housing up in that area. The road system won't handle it and it is just inappropriate for the area." (ROR, #10.) This conclusion is reasonably supported in the record by the comments of area residents. (ROR #6, pp. 12-17.)
The plaintiffs next argue that the defendant's conclusion as to general consideration 52.6.4 and general standard 52.7.2, property values and neighborhood appearance, is not reasonably supported in the record. The court does not agree.
The plaintiffs maintain that "the architectural renderings and site plans speak for themselves." (Plaintiffs' Brief, p. 11.) The record indicates that the defendant apparently agrees with the plaintiff on this point, and based their conclusion that the proposed uses were not in conformity with the neighborhood, in part, on those renderings and site plans. (ROR #10.) It is not for the court to substitute its judgment for that of the commission, but, rather, the court looks to the record to see that the commission's conclusions are reasonably supported. Frito-Lay, Inc. v. Planning and Zoning Commission, supra, 206 Conn. 572-73; Primerica v. Planning and ZoningCommission, supra, 211 Conn. 96. The record indicates that the defendant studied the renderings and plans submitted by the plaintiffs, and concluded that the proposed buildings did not conform to the neighborhood. (ROR #10.) Additionally, there was a substantial amount of testimony from the area residents in the record to support this conclusion by the defendant. (ROR #6.)
The plaintiffs further maintain that the defendant was not CT Page 3546 at liberty to accept the lay testimony of the area residents as to their opinion of the probable devaluation of their property should the applications be approved, over that of the only expert witness to testify at the public hearing, Mr. DeVoe, a General Certified Appraiser, who testified on behalf of the plaintiffs that the surrounding property values would not diminish. (Plaintiffs' Brief, pp. 11-13; ROR #6, pp. 5-7.) "It is well settled that an owner of property is competent to testify as to its market value." Misisco v. La Maita, 150 Conn. 680,684, 192 A.2d 891 (1963). "The rule establishing an owner's competence to testify reflects . . . the common experience that an owner is familiar with her [or his] property and knows what it is worth." State v. Baker, 182 Conn. 52, 60, 437 A.2d 843
(1980).
 An owner can base his [or her] opinion on . . . familiarity with the value of similar properties in the same general area as his [or her] own. . . . The witness, as owner of the property, was qualified to render [an] opinion on the value of his [or her] land, including diminished value. . . . The weight to be accorded that testimony rests with the trier of fact. (Emphasis supplied).
(Citations omitted; internal quotation marks omitted.) Watsonv. Watson, 20 Conn. App. 551, 560, 568 A.2d 1044 (1990), rev'd in part for further proceedings, 221 Conn. 698, 607 A.2d 383
(1992). Evidence in the record substantiates the conclusion by the defendant that the surrounding property values would diminish if the plaintiffs' applications were granted. (ROR # 6, pp. 13-18; ROR #6.6.) It was competent evidence four property owners and the Board could look to it and disregard the operation of the expert appraiser.
Moreover, the conclusion reached by the defendant concerning general consideration 52.6.4 and general standard 52.7.2, is not based solely on the issue of property values, but, rather, the record indicates that the defendant denied the plaintiffs' applications with respect to these criteria on the additional issue of conformity with the neighborhood. (ROR #10.) The record reasonably supports such a conclusion. (ROR #6, pp. 13-18.)
The plaintiffs' also argue that the record does not support the defendant's denial of the plaintiffs' applications based on CT Page 3547 parking. The court does not agree.
General consideration 52.6.5 applies to "[t]he number, location, and arrangement of off-street parking and loading spaces and the vehicular access to the lot". The record indicates substantial testimony concerning the parking and access issue by area residents on which the defendant could have reasonably based its denial on this issue. (ROR #6, pp. 13-18.)
The plaintiffs have cited three cases which support their position that the court should reverse the decision of the defendant, two of which are cited in the plaintiffs' brief, and the third of which was cited at oral argument before the court. However, that these cases are not persuasive. In Strong v.Conservation Commission of the Town of Old Lyme, 28 Conn. App. 435,611 A.2d 427 (1992), appeal dismissed, 226 Conn. 227,627 A.2d 431 (1993), cited by the plaintiffs at oral argument, the appellate court held that the trial court did not abuse its discretion in ruling that the commission's decision to deny the plaintiff's applications was not based on substantial evidence. The appellate court concluded that there was not "substantial, reliable evidence to support the agency's findings and conclusions." Id., 442. In the present case, however, there was substantial evidence in the record in the form of testimony at the public hearing to support the defendant's conclusions, as to traffic, safety and access; property values and neighborhood appearance; and, parking, as previously discussed. "Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency." Goldfeld v.Planning and Zoning Commission, supra, 3 Conn. App. 178.
Furthermore, in Strong, the appellate court ruled that the commission in that case did not provide the plaintiff with an opportunity to respond to concerns that were addressed by the commission for the first time when rendering their decision. Id. In the present case, however, the plaintiffs were given the opportunity to address the issue of the dangerous condition of Cherry Avenue as pointed out by Ed Schreiner, and yet the plaintiffs did not so respond. (ROR #6, p. 18.) The defendant's concern about the street grade of Cherry Avenue also went to that street's dangerous condition. The commission's decision must stand if even one reason given by the commission is reasonably supported by the record. Scalzo v. City of Danbury, CT Page 3548 supra, 224 Conn. 129. Here, there are additional reasons amply supported by the record to support a finding that the defendant did not act illegally, arbitrarily or unreasonably. (ROR #6.)
Finally, the plaintiffs argue that the defendant acted arbitrarily and illegally in denying the plaintiffs' applications for special use permits on seven lots in that it approved a subdivision of property owned by Joseph Polletta, one of the defendant's commissioners at the same special hearing. (Plaintiffs' Brief, pp. 16-17.) The plaintiffs argue that the same reasons for denying their special permits were relaxed when addressed to Mr. Polletta's property, and therefore the defendant's decision should be reversed. Id. The defendant maintains, however, that the regulations for subdivisions and those for special uses are separate and distinct, and, further, that Mr. Polletta's property "meets all pertinent regulations in every respect. The COMMISSION had no choice but to approve said application." (Defendant's Brief, pp. 18-19.) The record verifies that the defendant is correct in that the regulations governing subdivisions and special uses in Watertown are separate and distinct from each other; (ROR ##1 and 13.), and thus this argument of the plaintiffs' is not persuasive.
The record provides reasonable support for the defendant's decision to deny the plaintiffs' seven applications for special use permits, and, therefore, the plaintiffs' appeal is dismissed.
FLYNN, J.