318

Grafton
No. 88-465

STEPHEN BUSKEY AND RAYMOND BUSKEY, d/b/a S & R ASSOCIATES

v.

TOWN OF HANOVER

July 9, 1990

*David P. Cullenberg*, of Hanover, by brief and orally, for the plaintiffs.

*Law Office of Laurence F. Gardner*, of Lebanon (*David R. Fall* on the brief, and *Laurence F. Gardner* orally), for the defendant.

THAYER, J.   The defendant, the Town of Hanover, appeals the decision of the Superior Court (*Morrill*, J.) that the defendant's residential zoning ordinance is unconstitutional as applied to a certain parcel of land owned by the plaintiffs, Stephen and Raymond Buskey. We hold that the residential zoning ordinance is not arbitrary or unreasonable as applied to the plaintiffs' subject property. Accordingly, we reverse the trial court's order.

The plaintiffs own a 7,980-square-foot parcel of land located at 8 School Street in Hanover, which is at the southeast corner of the intersection of Allen Street, running east-west, and School Street, running north-south. There is currently a multi-residential colonial-style structure located on the property, and the apartments are rented primarily to Dartmouth College students. The plaintiffs' property is located within the General Residential District, GR-2 (GRD). The boundary line separating the GRD from the Central Business District, B-2 (CBD), runs from West Wheelock Street, which is parallel to and one block north of Allen Street, south along the center of School Street to the intersection of Allen and School Streets. It then turns east and runs 125 feet along Allen Street before it turns south and extends parallel to and 125 feet east of School Street down to West South Street, which is parallel to and one block south of Allen Street, and beyond. The area to the east of this line is entirely within the CBD, and that to the west is entirely within the GRD. Therefore, the plaintiffs' property is bordered to the north and east by commercially-zoned properties and to the south and west by residentially-zoned properties.

The town of Hanover adopted its first zoning ordinance in 1948. Under this ordinance, the boundary line separating the GRD from the CBD was located parallel to and 125 feet east of School Street, and extended from West Wheelock Street on the north to West South Street and beyond on the south. In 1961 the ordinance was amended and the boundary line was changed to what it is currently. Between 1961 and 1976 several non-residential uses were established within the GRD by special exception along School Street. These uses included a professional office, a parking garage, a town office, and a student center. In 1976, a new zoning ordinance was adopted, which eliminated provision for many of the non-residential uses that had previously been allowed in the GRD by special exception. The cur-

rent ordinance permits only one-family and two-family dwellings, planned residential developments and accessory uses.

There are fourteen properties along School Street in the two blocks between West Wheelock Street and West South Street, eleven of which are located within the GRD. Of the eleven properties, two are single-family residences and two are multi-family residences. The remainder are a fraternity, vacant lot, student center and parsonage, church, community recreation center and town office, parking garage and professional office. All but the last two of these uses are arguably either permitted uses or uses allowed by special exception under the 1976 zoning ordinance.

On December 2, 1985, the plaintiffs filed an application seeking a variance to remove their multi-family building and in its place to construct a parking lot. On January 15, 1986, the Town of Hanover Zoning Board denied the plaintiffs' request. The plaintiffs then appealed the denial to the superior court. In addition to their appeal, the plaintiffs sought a declaratory judgment that the zoning ordinance, as applied to their property, was unconstitutional. Specifically, the plaintiffs alleged that the enforcement of the ordinance bore no substantial relationship to any legitimate public purpose; arbitrarily, unlawfully and unreasonably restricted and deprived them of the reasonable use of their property; and constituted an impermissible taking prohibited by the fifth and fourteenth amendments to the United States Constitution and by part I, articles 2 and 12 of the New Hampshire Constitution. The plaintiffs later elected to dismiss their appeal of the denial of the variance and to proceed solely on their constitutional claims.

Following a hearing on August 10, 1988, the superior court ordered that the plaintiffs could use their property "in accordance with the rights, limitations and other requirements" of the CBD because the ordinance as applied to their property was unreasonable and arbitrary, and violated part I, articles 2 and 12 of the New Hampshire Constitution. The court stated that while "the property still has value as apartments . . . [,] it is clear that the value of the property, if included in the business district, would dramatically and substantially increase." Noting that one of the purposes of the boundary line was most likely to create a buffer zone between the residential district and the business district, the court found that the changes that had occurred in the plaintiffs' neighborhood "render[ed] the zoning line, as it applie[d] to plaintiffs' property, an artifact which long ago should have been modified to reflect the enormous transformation in

this area." The court explained that the buffer separating the two districts has effectively moved to the west side of School Street, and that the Town could not continue to preserve the residential character of the properties to the west of School Street at the plaintiffs' expense. Finally, the court stated that any change in use that the plaintiffs may make of their property will increase only slightly the already heavy traffic in the area.

The plaintiffs initially allege that the Town raises claims in its brief that were not properly preserved for appeal. Upon review of the record, we are unable to conclude that the Town makes any arguments that were not properly preserved.

██ ██ It is beyond question that the zoning of property to promote the health, safety and general welfare of the community is a valid exercise of the police power which the State may delegate to municipalities. *Town of Chesterfield v. Brooks*, 126 N.H. 64, 68, 489 A.2d 600, 603 (1985); RSA 672:1, I–III. There is a presumption that zoning ordinances are valid, and the party challenging their constitutionality carries the burden of overcoming this presumption. *Town of Nottingham v. Harvey*, 120 N.H. 889, 892, 424 A.2d 1125, 1127 (1980); *Carbonneau v. Town of Exeter*, 119 N.H. 259, 264, 401 A.2d 675, 678 (1979).

██ The right to use and enjoy one's property is a fundamental right protected by both the State and Federal Constitutions. N.H. CONST. pt. I, arts. 2, 12; U.S. CONST. amends. V, XIV; *Town of Chesterfield*, 126 N.H. at 68, 489 A.2d at 602–03. Part I, article 12 of the New Hampshire Constitution provides in part that "no part of a man's property shall be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people." We have indicated that part I, articles 2 and 12 of our State Constitution limit the police power of the State and its municipalities in their regulation of the use of property. *L. Grossman & Sons, Inc. v. Town of Gilford*, 118 N.H. 480, 482, 387 A.2d 1178, 1180 (1978). "Property" in the constitutional sense has been interpreted to mean not the tangible property itself, but rather the right to possess, use, enjoy and dispose of it. *Burrows v. City of Keene*, 121 N.H. 590, 597, 432 A.2d 15, 19 (1981). A "taking" of property occurs if the application of a zoning ordinance to a particular parcel denies the owner an economically viable use of his or her land. *Agins v. Tiburon*, 447 U.S. 255, 260 (1980).

■ ■ Before a zoning ordinance will be declared unconstitutional, the party challenging the ordinance must prove that its provisions are arbitrary and unreasonable, and have no substantial relationship to the health, safety, morals or general welfare of the community. *See Euclid v. Ambler Co.*, 272 U.S. 365, 395 (1926); *Town of Chesterfield*, 126 N.H. at 69, 489 A.2d at 604. To determine whether an ordinance is arbitrary and unreasonable, the injury or loss to the landowner must be balanced against the gain to the public. *Metzger v. Town of Brentwood*, 117 N.H. 497, 501, 374 A.2d 954, 957–58 (1977). In other words,

> "[w]hen the restriction as applied to a particular piece of land is unnecessary to accomplish a legitimate public purpose or the gain to the public is slight but the harm to the citizen and his [or her] property is great, the exercise of the police power becomes arbitrary and unreasonable and this court will afford relief under the constitution of this state."

*Id.* at 503, 374 A.2d at 958.

The plaintiffs' appraiser testified at trial that the property located at 8 School Street was not desirable for residential purposes. He explained that the size of the lot was too small for "any considered residential use." However, Raymond Buskey testified that except for two apartments that were vacant during the summer of 1988, he regularly rents the apartments in his building to Dartmouth College students, and that ten to eleven people generally reside there at any given time.

Raymond Buskey also testified that he and Stephen Buskey purchased the property in 1985 for $185,000. The appraiser testified that the property is currently worth $235,000 as zoned for residential purposes, and that it would be worth $550,000 if zoned commercially. As the trial court noted in its order, "the building has a not inconsequential value of approximately $235,000 . . . [and] the property still has value as apartments." Nevertheless, the court found that the value of the property would increase substantially if included in the business district, and that "[a]lthough plaintiffs have not been denied all use of their land, . . . plaintiffs are sustaining an enormous loss as a result of present restrictions."

■ We have stated that "'[z]oning regulations . . . , by their very nature, restrict the use of property and adversely affect individual rights. In most cases zoning regulations and proceedings thereunder will not amount to unconstitutional abuses of power.'" *Town of Chesterfield*, 126 N.H. at 68, 489 A.2d at 603 (quoting *Dugas v. Town*

of Conway, 125 N.H. 175, 182, 480 A.2d 71, 75 (1984)). Reasonable zoning regulations that limit economic uses of property, but do not "substantially destroy" the value of an individual piece of property, are constitutional. *Burrows v. City of Keene*, 121 N.H. at 598, 432 A.2d at 19–20; *see Carbonneau v. Town of Exeter*, 119 N.H. at 264, 401 A.2d at 678 (fact that value of property would increase if commercial use permitted insufficient to void zoning restrictions). In determining whether a regulation has substantially destroyed the value of a particular parcel, it is necessary to consider whether the property at issue is zoned in conformity with the uses that surround it, and whether these other uses are uniform. *Carbonneau*, 119 N.H. at 264, 401 A.2d at 679. That is, the uses of the adjacent properties may render the value of the subject property so small as to effect a taking of the property if the zoning ordinance is enforced. *Id.*

█ Because the plaintiffs' property is located on the boundary line separating the GRD from the CBD, the properties to the north and east of 8 School Street are zoned and used commercially. While those that lie to the south and west are zoned residentially, some of the properties along School Street have non-residential uses as a result of the special exceptions that were permitted under the zoning ordinance between 1961 and 1976, as discussed above. Of the eleven properties along School Street within the GRD, the law firm and the parking garage, which are respectively located at the northwest and northeast corners of the intersection of School Street and Maple Street, are the only two uses that would clearly not be permitted or allowed by special exception under the current zoning ordinance. All nine of the remaining properties in the GRD would either be permitted uses or arguably be allowed by special exception under the ordinance in effect today. Six out of these nine properties are either partially or totally used for residential purposes. Although the plaintiffs' property is not in conformity with the uses of neighboring properties to the north and east, we overrule the trial court's finding that 8 School Street does not conform to the uses of the surrounding properties, and find that the plaintiffs' property is in conformity with those properties to the south and west. *See Coutu v. State*, 123 N.H. 159, 162, 459 A.2d 236, 238 (1983) (trial court's findings will be overruled if not supported by evidence). To conclude otherwise would lead to the absurd result that all properties situated on a boundary line would not be in conformity with the surrounding uses, and would necessarily mean that the more restrictive ordinance substantially

destroys the value of these properties. *See Town of Windham v. Alfond*, 129 N.H. 24, 30–31, 523 A.2d 42, 46 (1986).

In light of the evidence that the value of the Buskeys' property has increased by $50,000 and that the building is still useful as a multi-tenant residence, we cannot say that the zoning ordinance has substantially destroyed the value of the plaintiffs' property. Thus, the fact that the plaintiffs could make the property more profitable as a commercial use does not render the ordinance unconstitutional as applied to their property. As the Supreme Court of Illinois has previously stated,

> "The fixing of zoning lines is a matter of legislative discretion and necessarily results in a different classification of uses on either side of the line. This does not render limitations on use of property near the boundary line in a more restricted district unreasonable or invalid."

*Wesemann v. Village of La Grange Park*, 407 Ill. 81, 89, 94 N.E.2d 904, 909 (1950) (citations omitted). The trial court noted that the main reason the boundary lines were drawn 125 feet east of School Street instead of down the center of School Street was to permit the properties bordering the east side of the street to serve as a buffer strip between the GRD and the CBD. The defendant posits that another purpose of the current zoning of School Street is to help control traffic in the area and prevent congestion. Preserving the residential character of a neighborhood and controlling the traffic to prevent congestion are among the valid goals of zoning ordinances. *See* RSA 674:17; *Town of Chesterfield*, 126 N.H. at 69, 489 A.2d at 604.

Evidence was introduced that the traffic in the area surrounding the plaintiffs' property is very heavy, and that permitting the plaintiffs to put their property to a commercial use would not increase the traffic. However, the trial court's decision would not limit the commercial use, and it is difficult to dispute that an office building forty-two feet in height, which is the maximum height allowed in the CBD, would increase the area's congestion.

Finally, the trial court found that the buffer zone separating the GRD from the CBD has effectively moved to the west side of School Street. Although there are a few non-residential uses on School Street, we conclude that the plaintiffs' property as a multi-tenant residence continues to serve as a buffer strip to protect the residential properties to the west from the commercial uses to the

east. Therefore, we hold (1) that the zoning ordinance, as applied to the plaintiffs' property, is not unnecessary to accomplish the legitimate public purpose of maintaining the residential character of the neighborhood or to control the congestion in the area, and (2) that the gain to the public from enforcing the ordinance upon the plaintiffs' property outweighs any injury the plaintiffs may suffer. *See Metzger*, 117 N.H. at 503, 374 A.2d at 958. Accordingly, the residential zoning ordinance is not unconstitutional as applied to the plaintiffs' property.

*Reversed.*

HORTON, J., did not sit; the others concurred.