Hillsborough-northern judicial district
No. 94-100

THOMAS P. QUIRK d/b/a FRIENDLY BEAVER CAMPGROUND

v.

TOWN OF NEW BOSTON

August 14, 1995

*Stanton E. Tefft*, of Bedford, and *Douglas & Douglas*, of Concord (*Mr. Tefft* and *Charles G. Douglas, III* on the brief, and *Mr. Douglas* orally), for the plaintiff.

*Nixon, Hall and Hess, P.A.*, of Manchester (*Francis G. Murphy, Jr.* and *Leslie C. Nixon* on the brief, and *Ms. Nixon* orally), for the defendant.

JOHNSON, J. Both the defendant, the Town of New Boston (town), and the plaintiff, Thomas P. Quirk, appeal from a decision of the Superior Court (*Hampsey*, J.) involving the town's zoning ordinance and the plaintiff's campground. The court rejected the plaintiff's arguments that the town's zoning ordinance is unreasonable, effects a taking, denies him equal protection of the law, and interferes with his vested property rights. The court also rejected the town's request for attorney's fees but granted its request for costs. We affirm.

The plaintiff purchased his 85.77-acre campground in 1979 for $125,000. The prior owner had built twenty-nine campsites on the property after receiving the required State approval. Without seeking State or local authorization, the plaintiff further developed the land. Nine years later, the campground had approximately 130 campsites, each with water, sewer, and electrical hookups, and several tent sites with limited utility hookups. In April 1987, the New Hampshire Water Supply and Pollution Control Commission inspected the plaintiff's property and discovered the unapproved expansion of the campground as well as extensive sewage violations. The commission ordered the plaintiff to either comply with State regulations or cease operating his campground.

In 1987 and 1988, the plaintiff borrowed money largely to finance the campground improvements required by the commission's order. He did not wait for State or local approval of his improvement plans before obtaining the loans and making some of the expenditures.

The trial court found that the plaintiff did not file a formal application for subdivision approval until January 23, 1989. In this

application, he requested permission to maintain 167 campsites and twenty-three tent sites. On May 15, 1989, the State approved only 123 campsites and twenty tent sites. Between April 1989 and August 1990, the State also approved the plaintiff's construction and operation of four septic systems.

In March 1989, the town enacted the zoning amendment that is at issue in this case: a "buffer zone" requirement for recreational campgrounds. The buffer zone is comparable to a setback line; it prevents certain land development within a minimum distance of campground perimeters. The first version of the amendment required a 300-foot buffer, but the town later decreased the buffer to 200 feet. The ordinance prohibits buildings, recreational facilities, trailer spaces, campsites, and tent sites in the buffer zone. The inner 100 feet may be used for any other purpose, including underground utilities. Natural vegetation must be maintained on the outer 100 feet.

In 1990, the town rejected the plaintiff's applications for a building permit and a variance for the construction of a new recreation hall that would encroach on the buffer zone. The plaintiff then filed suit against the town. He claimed that the buffer zone requirement is unreasonable, effects an unconstitutional taking of his property, violates his right to equal protection, and impairs his vested right to develop the land within his campground's buffer zone. On December 13, 1993, after a week-long trial, the superior court ruled in favor of the town. Later, the court granted the town's motion for costs but denied its motion for attorney's fees.

█ "On appeal, we sustain the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law." *Southern N.H. Water Co. v. Town of Hudson*, 139 N.H. 139, 141, 649 A.2d 847, 848 (1994) (quotation and brackets omitted). In the proceedings before the trial court, the plaintiff relied solely on the State Constitution. Because this court will not consider on appeal issues or arguments not raised below, *Perron v. City of Somersworth*, 131 N.H. 303, 305, 553 A.2d 283, 284 (1988), we will not consider the Federal Constitution in our examination and will cite law from other jurisdictions only to aid our analysis.

*I. Due Process*

The plaintiff argues that the buffer zone requirement is arbitrary and unreasonable because: (1) its enactment was first suggested by a town selectman, Willard Dodge, and did not issue from formal investigation or research regarding campgrounds; and (2) it was intended primarily to address anticipated problems that might arise

with the development of new campgrounds. We find the buffer zone requirement to be reasonable.

■ Substantive due process requires that zoning restrictions be rationally related to legitimate town goals. *See Asselin v. Town of Conway*, 137 N.H. 368, 372, 628 A.2d 247, 250 (1993). In *Caspersen v. Town of Lyme*, 139 N.H. 637, 646, 661 A.2d 759, 766 (decided June 27, 1995), Chief Justice Brock opined in a special concurrence that, "given an appropriate occasion," we should review this standard. Because the parties before us have not briefed or argued this issue, we are not faced with such an occasion at this time; hence, we leave for another day a consideration of the proper standard.

■ In arriving at a decision to enact a regulation, a town may properly consider the town selectmen's and planning board members' "knowledge concerning such factors as traffic conditions, surrounding uses, etc., resulting from their familiarity with the area involved." *Vannah v. Bedford*, 111 N.H. 105, 108, 276 A.2d 253, 255 (1971) (zoning board of adjustment decision regarding variance), *overruled on other grounds by Cook v. Town of Sanbornton*, 118 N.H. 668, 671, 392 A.2d 1201, 1203 (1978). A town must consider current as well as anticipated realities when enacting zoning regulations. *Cf. Patenaude v. Town of Meredith*, 118 N.H. 616, 621, 392 A.2d 582, 585 (1978) (planning board approval of subdivision plan). In reviewing the reasonableness of a particular zoning provision, we are mindful that zoning is a legislative function, *Britton v. Town of Chester*, 134 N.H. 434, 441, 595 A.2d 492, 496 (1991), and "[j]udging the wisdom of the legislation . . . is not the function of this court." *Sedgewick v. City of Dover*, 122 N.H. 193, 198, 444 A.2d 490, 492 (1982). "Given the presumption that zoning ordinances are valid, we consider whether the evidence supports the trial court's decision upholding the provision." *Asselin*, 137 N.H. at 372, 628 A.2d at 250 (citation omitted).

■■ The trial court found that before proposing a buffer zone requirement, Selectman Dodge "set forth his own camping experience, stating that campgrounds tend to be noisy since they are 'recreational destinations' with activities running well into the evening. He also described their intensity of land use; i.e. the concentration of campsites within a relatively small area." The town's decision to adopt Selectman Dodge's suggestion was not arbitrary, but rather came after serious deliberation. Minutes of planning board meetings reveal that the planning board members engaged in "much discussion . . . with the public present." During this discussion, the board members considered the various problems

created by the particularly intensive land use associated with campgrounds. They concluded that a buffer was necessary to avoid unsightliness, contain noise, and "partially protect abutters from the rapid spread of fire or other peril beyond the campground." These are legitimate, important town goals. *See id.* at 371, 628 A.2d at 249-50. That the town was primarily concerned with anticipated new campgrounds rather than the two existing ones is irrelevant. *See Patenaude,* 118 N.H. at 621, 392 A.2d at 585. In light of the extensive consideration given the buffer zone provision, we defer to the planning board's judgment as to its necessity and efficacy. *See Sedgewick,* 122 N.H. at 198, 444 A.2d at 492. We hold that the trial court did not err in finding the provision valid because it is a reasonable regulation consistent with the due process requirements of our constitution.

## II. Unconstitutional "Taking" of Property

The plaintiff argues that the buffer regulation is onerous and substantially destroys the value of his property and, therefore, effects an unconstitutional taking without just compensation. We disagree.

■■ Part I, article 12 of our constitution provides that "no part of a man's property shall be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people." By protecting the fundamental right to use, possess, enjoy, and dispose of one's property, this provision restricts municipal powers to regulate land use. *Buskey v. Town of Hanover,* 133 N.H. 318, 322, 577 A.2d 406, 409 (1990). However, "[i]t is beyond question that the zoning of property to promote the health, safety and general welfare of the community is a valid exercise of the police power which the State may delegate to municipalities." *Id.* And zoning ordinances, "by their very nature, restrict the use of property and adversely affect individual rights." *Id.* at 323, 577 A.2d at 410 (quotation omitted). A reasonable zoning ordinance, therefore, effects an unconstitutional taking only if its application "to a particular parcel denies the owner an economically viable use of his or her land." *Id.* at 322, 577 A.2d at 409. Conversely, "[r]easonable zoning regulations that limit economic uses of property, but do not substantially destroy the value of an individual piece of property, are constitutional." *Id.* at 324, 577 A.2d at 410 (quotation omitted).

■ To quantify the extent that a property's economic viability is diminished by government regulation, the court first must define the affected property. In the present case, the plaintiff views the affected property as the land within the buffer zone. He argues that

the critical factor is the size of his loss absolutely, *i.e.*, we should compare the value of the land within the buffer zone before and after the regulation. We reject his argument and conclude that the proper measure in this case is the size of the plaintiff's loss as compared to the value of his entire campground.

The plaintiff relies heavily on *Loveladies Harbor, Inc. v. United States*, 28 F.3d 1171 (Fed. Cir. 1994), where the Federal Circuit Court of Appeals focused upon twelve-and-one-half acres of a 250-acre tract in its takings analysis. *Loveladies* does not support the plaintiff's contention, however, because the court explicitly declined to adopt a bright-line rule to define the relevant property in takings analyses. *Id.* at 1181. Instead, the *Loveladies* court embraced "a flexible approach, designed to account for factual nuances." *Id.*

 Focusing on a discrete portion of a larger tract may be appropriate where the land owner has fragmented the property for distinct development or uses. *See, e.g., Penna. Coal Co. v. Mahon*, 260 U.S. 393, 414-15 (1922) (surface rights distinguished from mining rights); *Loveladies Harbor, Inc.*, 28 F.3d at 1174 (land developed or sold before regulatory environment existed not considered part of property affected by permit denial). A narrower focus may also be proper where portions of the larger tract have already been dedicated to benefit the public. *See Loveladies Harbor, Inc.*, 28 F.3d at 1181. While these factors are pertinent considerations, we do not profess to convert them into a conclusive test. Moreover, these considerations do not detract from the general rule that property owners cannot "establish a 'taking' simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development." *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 130 (1978).

 In the present case, we find no compelling reason to view the perimeter as a discrete segment of the campground. That the plaintiff has never treated the perimeter of his campground as distinct from the interior supports this finding. "At least where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety." *Andrus v. Allard*, 444 U.S. 51, 65-66 (1979); *see Penn Central Transp. Co.*, 438 U.S. at 130-31.

The plaintiff concedes that unless his perimeter is viewed as a discrete unit, he cannot establish that the zoning ordinance substantially destroys the value of his land. Accordingly, we uphold the trial court's determination that no unconstitutional taking occurred.

## III. Equal Protection

The plaintiff next argues that the town violated his right to equal protection because the buffer zone requirement is "targeted to affect those landowners who have campers on their land as opposed to mobile homes or cluster housing." We uphold the trial court's determination that differences between campgrounds and other properties justified dissimilar treatment by the town.

■■ "Under the New Hampshire Constitution, a middle tier analysis is employed, and in order for a classification in a zoning ordinance to be constitutional it must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." *Asselin v. Town of Conway*, 135 N.H. 576, 577, 607 A.2d 132, 133 (1992) (quotation omitted).

■■ ■■ Concerns about the particularly intensive use of recreational campgrounds dominated the planning board's discussions regarding the buffer requirement. Aside from his assertion that he and other land owners are similarly situated, the plaintiff offers no evidence that the intensity of land use on residential properties is comparable to that on recreational campgrounds. Instead, he maintains that the trial court erroneously focused upon the people who use the properties rather than the owners. His contention is without merit; the buffer requirement is designed to mitigate negative effects of intense land use, not land ownership. The trial court could reasonably conclude that recreational campgrounds are used more intensely than residential properties. Thus, we find a clear distinction between recreational campgrounds and permanent housing developments sufficient to warrant disparate treatment with respect to the buffer requirements in this case.

## IV. Vested Rights

■■ The plaintiff contends that he has a vested right to complete the expansion of his campground into the buffer zone because he built "oversized septic systems and a recreation hall to support 275 total sites," and because he "borrowed and sunk $355,000 into his campground." We uphold the trial court's determination that "the evidence fails to establish the existence of vested rights."

[A] landowner who reasonably relies, in good faith, upon the absence of any regulation that would prohibit a proposed project acquires a vested right to complete the project where the owner (1) has engaged in substantial construc-

tion on the property, or (2) has incurred substantial liabilities directly related to his good faith reliance.

*Hussey v. Town of Barrington*, 135 N.H. 227, 232, 604 A.2d 82, 85 (1992). "A person who purchases land with notice of statutory impediments to the right to develop that land can justify few, if any, legitimate investment-backed expectations of development rights which rise to the level of constitutionally protected property rights." *Claridge v. N.H. Wetlands Bd.*, 125 N.H. 745, 751, 485 A.2d 287, 291 (1984). Therefore, when a property owner commences construction or makes an investment prior to securing the required building permits, the portion of work completed and liabilities incurred prior to the obtaining of the permits are not considered. *See Donadio v. Cunningham*, 277 A.2d 375, 382 (N.J. 1971); *cf. Mobil Oil Corp. v. Keene*, 112 N.H. 155, 158, 290 A.2d 628, 630 (1972) (landowner did not acquire vested right to construct filling station by filing application for permit).

■ Even if we assume, *arguendo*, that the plaintiff did substantially invest in campground expansion before the buffer zone requirement was established, his investment risks, taken "in the face of statutory or regulatory impediments," do not support a vested rights claim. *See Claridge*, 125 N.H. at 751, 485 A.2d at 291. At no time before the zoning ordinance was amended did the plaintiff seek State or local approval for additional sites within or without the buffer zone. Any expectations that such approval would be forthcoming were unreasonable, particularly because the State previously had limited the campground to a total of 143 lots despite the plaintiff's request for 167 campsites and twenty tent sites. Moreover, the plaintiff's permit to maintain 143 lots stated in capital letters that "no new sites may be created without obtaining State subdivision approval." In addition, even without the buffer requirement, much of the campground perimeter is wetland and may not be developed. We therefore agree with the trial court's determination that "the plaintiff's plans to expand the campground to 275 sites, largely utilizing the buffer zone, without knowing the requirements for and the ability to obtain State and local approval, would appear to be a projection based upon speculation." The trial court correctly found that the plaintiff had not acquired any vested rights that would entitle him to build in the buffer zone.

## V. Costs

The plaintiff's final argument is that the trial court erroneously awarded $6,081.35 in costs to the town. We disagree.

On December 27, 1993, the town filed a motion requesting costs and attorney's fees. The plaintiff objected, in part because the town had not itemized its costs. The court denied the motion for attorney's fees and declined to rule on the motion for costs because the costs had not yet been itemized. The town filed a motion for reconsideration, which included an itemization. The plaintiff filed an objection in which he did not challenge the accuracy of the itemized costs.

On appeal, the gravamen of the plaintiff's complaint is that the town itemized its costs in its motion for reconsideration rather than filing a separate memorandum of itemized costs. Because superior court rules do not require parties to answer motions for reconsideration "unless ordered by the Court," SUPER. CT. R. 59-A(2), the plaintiff contends that by considering the town's motion for reconsideration as a motion for costs, the court deprived him of an opportunity to object to the itemization.

■■■ The trial court did not abuse its discretion in awarding the town costs. The plaintiff's argument elevates form over substance. While the rules do not require objections to motions for reconsideration, they do not prohibit such objections. In the present case, the court explicitly informed the parties that it would rule on the request for costs after receiving the town's itemization. The plaintiff, therefore, had notice that a decision on the costs issue would follow an itemization. That the itemization came in the form of a motion for reconsideration is irrelevant.

■■■ The plaintiff also complains that the trial court should not have ruled on the town's motion for reconsideration because it was filed two days late. *See* SUPER. CT. R. 59-A(1). We disagree. Unlike the town's motion for attorney's fees, the town's motion for costs was not denied, and the superior court's order indicated that the court would address the cost issue if the town filed an itemization. In filing its cost itemization, therefore, the town was not seeking reconsideration, but was simply complying with the court's invitation to itemize its costs. The superior court rules impose no deadline for filing a request for costs, and costs are allowed "as of course to the prevailing party," SUPER. CT. R. 87(a). The trial court did not abuse its discretion by considering the town's motion.

## VI. *Attorney's Fees*

■■■ In its cross-appeal, the town argues that the plaintiff should pay the town's attorney's fees. The court determined that an award of attorney's fees would be inappropriate in this case because "nothing in [the plaintiff's] claim or throughout his pursuit of a legal

remedy indicated bad faith, frivolity or an intent to harass the Town." "In reviewing the trial court's denial of the [town's] motion for attorney's fees, we defer to the trial court's decision and will not overturn it absent an abuse of discretion." *Town of Littleton v. Taylor*, 138 N.H. 419, 424, 640 A.2d 780, 783 (1994).

██ ██ We conclude that the trial court did not abuse its discretion. Because "no person should be penalized for merely defending or prosecuting a lawsuit," *Harkeem v. Adams*, 117 N.H. 687, 690, 377 A.2d 617, 619 (1977), "[a]n award of attorney's fees is the exception rather than the rule," *Flanagan v. Prudhomme*, 138 N.H. 561, 576, 644 A.2d 51, 62 (1994). By bringing this lawsuit, the plaintiff tried to prevent unwanted interference with his legitimate property interests. He pursued his action by advancing reasonable, albeit mistaken, interpretations of the constitutional law of takings and equal protection. To allow the town to recover attorney's fees under these circumstances "might unjustly deter those of limited resources from prosecuting or defending suits" in the future. *Harkeem*, 117 N.H. at 690, 377 A.2d at 619.

*Affirmed.*

All concurred.