Carroll
No. 98-051

RICHARD A. LAKE

v.

JOSEPH E. SULLIVAN & a.

January 24, 2001

Richard A. Lake, by brief and orally, pro se.

McLane, Graf, Raulerson & Middleton, P.A., of Manchester (Arthur G. Greene and Rachel A. Hampe on the brief, and Mr. Greene orally), for the defendants.

BROCK, C.J. The plaintiff, Richard A. Lake, appeals an order of the Superior Court (O'Neill, J.) granting the defendants' motion for summary judgment. The defendants are the Kearsarge Building Company, Inc. (Kearsarge), the Forest Edge Water Company (Forest Edge), Joseph E. Sullivan, president of Kearsarge and Forest Edge, and Joseph E. Sullivan, III (Ned Sullivan), a clerk of Kearsarge and an employee of Forest Edge. We affirm.

The plaintiff currently occupies a house in North Conway to which his son, William Lake, holds record title. Kearsarge built the house in 1985 and sold it to the original owners in 1986. The original owners sold the property to the plaintiff's son in 1987. The property receives its water supply from Forest Edge.

Since October 1994, the plaintiff has lived in his son's house pursuant to a contractual agreement. Under its terms, the plaintiff agreed to purchase the property for $93,000 by October 1, 1999. The purchase price included a $3,500 down payment, payment of $6,500 in property taxes owed by his son, and forgiveness of a $7,000 debt owed to the plaintiff by his son. The plaintiff also agreed to assume a $76,000 mortgage on the property. According to the contract, until he "exercises his right of purchase," the plaintiff is responsible to pay the monthly mortgage installments. In addition, from the date of the agreement the plaintiff agreed to pay all future utility charges and taxes on the property. If the plaintiff did not purchase the property as contemplated, all payments he made to the date of default would accrue to the benefit of his son as liquidated damages.

According to the plaintiff, at some point before he occupied his son's property, defendant Ned Sullivan, a neighbor, cleared trees, planted grass, put up a picnic table, and buried a propane tank on the property. In addition, because water bills for the property had been in arrears for over two years, in June 1995 the Sullivans entered the property, which the plaintiff then occupied, to disconnect the water service. In doing so, they dug holes and cleared vegetation on the property. Subsequently, the plaintiff brought suit against the defendants alleging statutory and common law claims of trespass, breach of covenant to preserve a private road, and breach

of warranty of workmanlike quality. The defendants moved for summary judgment. The trial court ruled that the agreement between the plaintiff and his son was a lease-option agreement rather than a purchase and sales agreement and that as a tenant, the plaintiff lacked standing to raise his claims. The court granted the defendants' motion for summary judgment.

On appeal, the plaintiff argues that the trial court erred because (1) the contract with his son was a purchase and sales agreement; (2) as a purchaser of the property, he had standing to bring claims against the defendants; (3) genuine issues of material fact preclude summary judgment; and (4) it failed to require joinder of all parties in interest.

Summary judgment is appropriate where, after a court considers all of the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* RSA 491:8-a, III (1997); *Horse Pond Fish & Game Club v. Cormier*, 133 N.H. 648, 653, 581 A.2d 478, 481 (1990). For purposes of summary judgment, a disputed fact is material "if it affects the outcome of the litigation under the applicable substantive law." *Sandford v. Town of Wolfeboro*, 143 N.H. 481, 484, 740 A.2d 1019, 1021 (1999) (quotation omitted). One opposing a motion for summary judgment must support his or her objection with "specific facts showing the existence of a genuine issue for trial." *Omiya v. Castor*, 130 N.H. 234, 237, 536 A.2d 194, 196 (1987) (quotation and citation omitted).

The plaintiff first argues that the trial court erred when it determined that the agreement was "a lease with an option to buy." According to the plaintiff, he is not a tenant, but a purchaser with an equitable interest in the property. We disagree.

Interpretation of a written contract is ultimately a question of law for this court to decide. *See Holden v. Eng'g and Surveying v. Pembroke Rd. Realty Trust*, 137 N.H. 393, 395, 628 A.2d 260, 262 (1993). We will interpret a contract according to the common meaning of its words and phrases and judge the intent of the parties by objective criteria rather than the "unmanifested states of mind of the parties." *Logic Assoc's, Inc. v. Time Share Corp.*, 124 N.H. 565, 572, 474 A.2d 1006, 1010 (1984).

Viewed as a whole, the contract between the plaintiff and his son is more akin to a lease with an option to purchase rather than a purchase and sales agreement. While the agreement recites that the plaintiff agrees to purchase the property and his son agrees to sell it and execute a deed over to the plaintiff, language typically found in a purchase-sale agreement, terms such as "lease" and "exercise

right of purchase," more consistent with a lease-option agreement, are used throughout the contract. More importantly, it is clear from the contract that although the plaintiff has invested money in the property, he is not obligated to pay the full purchase price. *See, e.g.*, 77 AM. JUR. 2D *Vendor and Purchaser* § 35 (1997) (if an agreement imposes no obligation upon the purchaser to be liable for the full purchase price of the property, it is merely an option contract).

■ According to the contract, if the plaintiff defaults, his son can only recover, as liquidated damages, the amount paid by the plaintiff up to that date. Like an option contract, which is unilateral in nature until the optionee exercises his or her right to purchase, *see* 49 AM. JUR. 2D *Landlord and Tenant* § 381 (1995), the agreement does not obligate the plaintiff to pay the full purchase price in the event of default. Therefore, the plaintiff has only a right to acquire an interest in the property and has "neither the ownership of nor interest in the property itself." *Id.*

The plaintiff also argues that the trial court erred in determining that as a tenant he lacked standing. "In evaluating whether a party has standing to sue, we focus on whether the plaintiff suffered a legal injury against which the law was designed to protect." *Roberts v. General Motors Corp.*, 138 N.H. 532, 535, 643 A.2d 956, 958 (1994) (citation omitted). Based on the lease-option contract between the plaintiff and his son, any right of action that the plaintiff has against the defendants stems from his interest in the property as a tenant. *Cf. In re Estate of Jesseman*, 121 N.H. 313, 315, 429 A.2d 1036, 1037-38 (1981). Thus, we must determine whether the trial court erred in its assessment of the plaintiff's standing on each claim based upon his qualified possessory interest in the property.

■ According to the plaintiff, Kearsarge constructed a defective and leaky roof on the property and is liable to him for breach of warranty of workmanlike quality. We disagree. Only a purchaser of the property may bring such a claim. *See Lempke v. Dagenais*, 130 N.H. 782, 789, 547 A.2d 290, 291 (1988). Any claim that the plaintiff may have regarding the defective roof would be against his son, as a lessor, for breach of implied warranty of habitability. *See Kline v. Burns*, 111 N.H. 87, 92-93, 276 A.2d 248, 251-52 (1971).

■ The plaintiff's next claim is that Kearsarge should compensate him for breaching a deed covenant to maintain the road fronting the property as a private road. We disagree. A covenant in a deed is an agreement to do or not to do particular acts. *See Arnold v. Chandler*, 121 N.H. 130, 133, 428 A.2d 1235, 1237 (1981).

Covenants may be enforced between original parties and their successors "depending on the nature of the promise [within a covenant] and on the type of relief requested." *Traficante v. Pope*, 115 N.H. 356, 358, 341 A.2d 782, 784 (1975) (citations omitted). The plaintiff is neither an original party to nor, as a tenant, a successor in interest to the covenant. Thus, any covenant that the builder allegedly made in the deed would extend to an owner of the property, not to the plaintiff.

■ The plaintiff has also alleged several trespass claims against the defendants for which the trial court ruled he lacked standing. The first, involving activities of Ned Sullivan alone, occurred before the plaintiff became a tenant. Absent a specific assignment from his son, the plaintiff may not seek legal relief for any damages that occurred before his tenancy. *Cf. Larabee v. Potvin Lumber Co., Inc.*, 459 N.E.2d 93, 96 (Mass. 1983); *Dorvin Land Corp. v. Parish of Jefferson*, 469 So. 2d 1011, 1013-14 (La. Ct. App. 1985).

■ The plaintiff also advanced statutory and common law claims of trespass for the Sullivans' activities on the property in June 1995. The applicable statute, RSA 539:1, provides that no person shall wilfully and unlawfully damage trees "on the land of another person." RSA 539:1 (Supp. 1994) (repealed effective January 1, 1996). The purpose of this statute was to protect trees as marketable resources by allowing a landowner to recover the value of trees damaged by a trespasser. *See Peaslee v. Koenig*, 122 N.H. 828, 831, 453 A.2d 832, 833 (1982). Thus, as a tenant, the plaintiff would not be entitled to recover the statutory penalty for any trees damaged by the defendants' trespass.

■ Although the plaintiff could recover damages if the claimed trespass in June 1995 injured his possessory interest in the property, *cf. Peaslee*, 122 N.H. at 831, 453 A.2d at 833, the trial court correctly ruled that he lacked standing to bring his common law claim of trespass because he failed to offer proof that his possessory interest had been disturbed. In addition, the court ruled that even if standing did exist, the defendants' actions were authorized by a utility easement. We agree. Although the plaintiff has presented documents to this court suggesting that his possessory interest was damaged as a result of the Sullivans' alleged trespass and disputing the validity of the utility easement, nothing in the record indicates that these documents were ever presented to the trial court. On appeal, we consider only evidence and documents presented to the trial court. *See* SUP. CT. R. 13. Accordingly, we conclude that the

defendants were entitled to summary judgment on this claim. *See, e.g., Omiya*, 130 N.H. at 238, 536 A.2d at 196.

 The plaintiff further argues that the trial court erred because it failed to require joinder of all parties in interest pursuant to RSA 514:10. The plaintiff failed to raise this issue below, and we will not address it on appeal. *See Quirk v. Town of New Boston*, 140 N.H. 124, 128, 663 A.2d 1328, 1331 (1995); *see also State v. Porter*, 144 N.H. 96, 100-01, 738 A.2d 1271, 1275 (1999) (rules regarding preservation of issues on appeal not relaxed for *pro se* litigants).

We have considered the plaintiff's remaining arguments and find them to be without merit, warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.