# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case Nos. 2022-0104 and 2022-0107, <u>Roger Pratt & a. v. Agel Corman Realty, Inc. & a.</u>, the court on December 13, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal and has determined to resolve these consolidated appeals by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The plaintiffs, Roger and Sandra Pratt, appeal an order of the Superior Court (<u>Leonard</u>, J.) denying the plaintiffs' plea of title and granting the defendants, Agel Corman Realty, Inc. (Agel Corman) and Stephen Agel, a writ of possession. We affirm.

The following facts either were found by the trial court or derive from the record submitted on appeal. On October 22, 2015, the parties signed a written "RENTAL/OPTION AGREEMENT" (the Agreement) allowing the plaintiffs to rent a single-family home (the Property) from Agel Corman, which Stephen Agel owns, from November 5, 2015, to November 5, 2020. The Agreement stated the plaintiffs were to pay rent monthly to Town & Country Realty (Town & Country), a local realtor designated to represent Agel Corman in the transaction. Town & Country collected and forwarded the plaintiffs' rent payments to the defendants.

The Agreement also contained two provisions relating to the plaintiffs' option to purchase the Property. Provision 4 (labeled "OPTION") gave the plaintiffs the option to purchase the Property for $89,900.00 at the end of the rental term. Provision 2 required the plaintiffs to make a $5,000 "Option Earnest Money" payment to be applied to the Property's purchase price "in the event the Tenant completes the purchase." If, however, the plaintiffs did not complete the purchase at the end of the rental term, the $5,000 of "earnest money" would become non-refundable. In addition to the $5,000 payment, $84 of each of the plaintiffs' monthly payments over the 5-year term was to be applied "toward the purchase price, and/or closing costs." The plaintiffs paid the $5,000 of "Option Earnest Money," moved in, and made their monthly payments as specified in the Agreement.

On August 20, 2020, the plaintiffs notified the defendants that they would not purchase the Property. On September 28, 2020, Agel Corman responded with an eviction notice to quit the Property by November 5, 2020, the end of the Agreement term. The plaintiffs failed to do so. Agel Corman then filed an eviction action in circuit court. In response, the plaintiffs filed

suit in the superior court asserting a plea of title, and the defendants counterclaimed requesting a writ of possession.

Meanwhile, the plaintiffs continued to make monthly payments to Town & Country for November and December 2020. When the defendants learned the plaintiffs were continuing to pay rent, they informed the plaintiffs by email that "[w]hile Agel Corman Realty will accept and deposit these ongoing checks, acceptance of these payments may not be construed as creating any new lease . . . and may not be construed as a waiver of Agel Corman Realty's rights to eviction . . . ."

After a bench trial, the superior court denied the plaintiffs' plea of title and granted the defendants' request for a writ of possession. The superior court found the Agreement is unambiguously a lease with an option to purchase, and, therefore, the plaintiffs have no equitable interest in the Property. Additionally, the court found the defendants had good cause to evict the plaintiffs and the defendants did not create a new tenancy by accepting the plaintiffs' payments beyond the original lease term. These consolidated appeals followed.

On appeal, the plaintiffs argue that the trial court erred by: (1) finding the plaintiffs had no equitable interest in the Property; (2) granting a writ of possession to the defendants based on grounds not in the eviction notice; and (3) finding the defendants did not create a new tenancy by accepting rental payments after the termination of the Agreement.

Relying on a Vermont Supreme Court case, Prue v. Royer, 67 A.3d 895 (Vt. 2013), the plaintiffs argue the Agreement was a "contract for deed" giving them an equitable interest in the Property. The defendants counter that the trial court correctly concluded that the Agreement unambiguously constitutes a lease with an option to purchase, not a contract for deed. We agree with the defendants.

The interpretation of a contract is ultimately a question of law for this court to decide. Birch Broad. v. Capitol Broad. Corp., 161 N.H. 192, 196 (2010). Accordingly, we review a trial court's interpretation of a contract de novo. Id. We will interpret a contract according to the common meaning of its words and phrases and judge the intent of the parties by objective criteria rather than the "unmanifested states of mind of the parties." Lake v. Sullivan, 145 N.H. 713, 715 (2001) (quotation omitted). When interpreting contracts, we read the document as a whole. See Birch Broad., 161 N.H. at 196.

New Hampshire has settled law on contracts for deeds and option contracts, and we need not rely on Vermont law as argued by the plaintiffs. In Lake, the plaintiff paid a down payment and was given the option to purchase a property for a specific price by a specific date. Lake, 145 N.H. at 714. There

2

we held that, when an agreement does not hold the purchaser liable for the full purchase price of the property in the event of a default, it is an option contract not giving rise to an equitable interest. Id. at 716. The Agreement at issue here is virtually indistinguishable from the one in Lake: it required the plaintiffs to make a down payment and allowed them to purchase the Property at the end of the Agreement term.

Further, like the agreement in Lake, the Agreement here was unilateral. No language in the Agreement obligated the plaintiffs to purchase the Property. The language of the Agreement is conditional, stating that the option earnest money would be applied against the purchase price "in the event the Tenant completes the purchase," but "should the Tenant not complete the purchase" the earnest money "shall become non-refundable." As in Lake, the language of the Agreement as a whole reflects that it is a lease with an option to purchase. See id. at 715-16. For example, the Agreement includes the use of the terms "tenant" and "rent," it refers to "option earnest money" in provision 2, and it is labeled a "RENTAL/OPTION AGREEMENT." Because the plaintiffs have only a right to acquire an interest in the Property, they have neither the ownership of, nor an interest in, the Property itself. See id. at 716.

The plaintiffs argue that the Agreement was a contract for deed because of the $84 monthly payment towards the purchase price as well as the portion of the monthly payment labeled "[p]rincipal and interest - $84,900 @ 5%, 30 years." Additionally, based on the isolated phrase "[t]he Landlord shall give Tenant a mortgage," the plaintiffs argue that the Agreement imposes bilateral obligations on the parties and should be construed as a contract for deed. See Randall v. Riel, 123 N.H. 757, 758-59 (1983) (describing a "contract for deed" as a mortgage substitute where the purchaser, after making a down payment, occupies the property, and pays in monthly installments the balance of the principal and interest).

We are not persuaded that the Agreement provision that "[t]he Landlord shall give Tenant a mortgage" imposed an unconditional obligation on the defendants. This language appears in the provision titled "OPTION" and when read in context, appears to be a conditional obligation for the defendants to provide the plaintiffs with a mortgage only if the plaintiffs exercised their option to purchase the Property. Similarly, because the defendants were not obligated to provide the plaintiffs a mortgage until after they exercised their option, we do not read the Agreement as providing that $455.76 of the plaintiffs' monthly rent payments be attributed to a mortgage on the Property. However, even if a portion of the plaintiffs' monthly rent payments were attributed to the purchase price, that does not necessarily transform the Agreement into a contract for deed. Indeed, this conclusion is also consistent with Lake. In Lake, we found a unilateral contract even when the plaintiff had assumed the mortgage on the property because, like the Agreement here, the Lake agreement failed to impose bilateral obligations on the parties. See Lake, 145 N.H. at 714, 716. We affirm

3

the trial court's conclusion that the Agreement was a lease with an option to purchase and, therefore, the plaintiffs do not have an equitable interest in the Property.

The plaintiffs next argue that the trial court erred by granting a writ of possession to the defendants based on grounds not in the eviction notice. Specifically, the eviction notice states the ground for eviction was that November 5, 2020 was the final day of the rental agreement term constituting "other good cause" for eviction. The trial court, however, found that Agel Corman had good cause to evict the plaintiffs because it desired to sell the Property. The defendants counter that the plaintiffs failed to preserve this issue.

Assuming without deciding that the issue is preserved and that the trial court erred when it granted a writ of possession on grounds not listed in the eviction notice, we nonetheless affirm the trial court on the merits on alternative grounds. See In the Matter of Liquidation of Home Ins. Co., 157 N.H. 543, 552 (2008) ("[W]e may sustain a trial court's decision, though made upon erroneous grounds, so long as there are valid alternative grounds to support it."). "[G]ood cause," or other justification is only required to support evictions of lessees from "restricted property." RSA 540:2, I-II (2021). We interpret the trial court order as reflecting the trial court's decision to assume without deciding that the Property was "restricted," and to then find good cause. See State v. Surrell, 171 N.H. 82, 88 (2018) ("The interpretation of a trial court order presents a question of law for us to decide."). Because the trial court made no finding as to whether the Property was "restricted," we would ordinarily remand unresolved factual issues for analysis under the correct legal standard. Auger v. Town of Strafford, 158 N.H. 609, 614 (2009). However, when the record reveals that a reasonable fact finder necessarily would reach a certain conclusion, we may decide the issue as a matter of law. Id. Here, as explained below, the record demonstrates that the property at issue was "nonrestricted." See RSA 540:1-a, I-II (2021) (defining "[n]onrestricted" and "[r]estricted" property).

Under RSA 540:1-a, I, a single-family house is a nonrestricted property when its owner does not own more than three single-family houses at any one time. See RSA 540:1-a, I. The record here establishes that the Property was a single-family house and that Agel Corman did not own more than three single-family houses at one time, making the Property at issue "nonrestricted." Although expiration of a lease does not constitute "other good cause" under RSA 540:2, II, that limitation applies only to restricted property. AIMCO Props. v. Dziewisz, 152 N.H. 587, 590 (2005) (expiration of a lease alone is not good cause for eviction from restricted property). Any lawful reason for eviction satisfies RSA 540:2, I, for nonrestricted property, and here the eviction notice included a lawful reason for the eviction: the expiration of the lease term. See Kalikuddy v. Alicea, No. 2021-0218 (non-precedential order at 1-2), 2021 WL

4

6333055 (N.H. Dec. 20, 2021). Accordingly, the defendants were required merely to give the plaintiffs proper notice of eviction, which they did through an eviction notice; they did not need "[o]ther good cause" to evict. See RSA 540:2, I-II. Therefore, the trial court did not err when it granted the writ of possession. See In the Matter of Liquidation of Home Ins. Co., 157 N.H. at 552.

The plaintiffs' final argument is that collection of the November and December 2020 rent by Town & Country as the defendants' agent constituted acceptance by the defendants and thereby either created a new tenancy or waived the defendants' right to proceed with the eviction. We are unpersuaded.

Although it is unclear from our case law whether creation of a new tenancy and waiver of a landlord's eviction rights must be addressed together or as separate issues, because the plaintiffs rely on the same facts for both their waiver and creation of a new tenancy arguments, we need not clarify our case law to resolve the current controversy. Whether a landlord has waived the right to evict a tenant or created a new tenancy presents an issue of fact that requires balancing the evidence to show consent or a contrary intent. Colonial Village v. Pelkey, 157 N.H. 91, 93-94 (2008); Miller v. Slania Enters., 150 N.H. 655, 660-61 (2004). We will not disturb the findings of the trial court unless they lack evidentiary support or are erroneous as a matter of law. Colonial Village, 157 N.H. at 92. Our inquiry is to determine whether the evidence presented to the trial court reasonably supports its findings, and then whether the court's decision is consonant with applicable law. See id.

Whether an agency relationship existed is a question of fact. Herman v. Monadnock PR-24 Training Council, 147 N.H. 754, 758 (2002). Although the trial court did not make an express finding that no agency relationship existed in November and December of 2020 when Town & Country accepted the payments, we assume that the trial court made all subsidiary findings necessary to support its decision. See Smith v. Lillian V. Donahue Trust, 157 N.H. 502, 508 (2008). We conclude that the trial court's implicit finding that no agency relationship existed when Town & Country received the November and December 2020 rent checks is supported by the record.

It is undisputed by the parties that Town & Country was the defendants' agent under the Agreement in this transaction. Provision 18 of the Agreement specifically states that "[t]he Tenant (Buyer) acknowledges understanding that Town & Country Realty represents the Landlord (Seller) in this transaction." That agency extended only to "this transaction." That term ended on November 5, 2020. We therefore conclude that Town & Country's actual authority had already terminated when it subsequently received the November and December 2020 payments. Therefore, acceptance of the plaintiffs' November and December 2020 payments by Town & Country was not attributable to the defendants. To the extent the plaintiffs contend that Town & Country had implied authority to receive the payments, we disagree. As soon as the

5

defendants learned that Town & Country had been receiving payments from the plaintiffs, the defendants did not acquiesce to that conduct, but, rather, notified the plaintiffs that acceptance of the payments did not waive the defendants' right to evict. See Bouffard v. State Farm Fire & Cas. Co., 162 N.H. 305, 313 (2011) ("[I]mplied authority may be conferred by acquiescence of the principal in the actions of the agent.").

The record supports the trial court's finding that the defendants neither waived their right to evict the plaintiffs under the original eviction notice nor created a new tenancy. Acceptance of future rent does not waive the right to proceed with an eviction or create a new tenancy when there is evidence a landlord intended to continue with eviction proceedings despite the payment. So. Willow Properties v. Burlington Coat Factory of N.H., 159 N.H. 494, 500 (2009). Here, as soon as the defendants discovered their former agent was continuing to receive rent payments, the defendants immediately notified the plaintiffs that Town & Country's acceptance of ongoing payments would not waive the defendants' right to eviction, thereby clearly indicating that the defendants intended to proceed with eviction proceedings. We conclude that the trial court's finding is supported by the evidence and not erroneous as a matter of law. See Colonial Village, 157 N.H. at 92.

Affirmed.

MacDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred; HICKS, J., did not participate in the final vote, see N.H. CONST. pt. II, art. 78.

**Timothy A. Gudas,**
**Clerk**

6